United States Court of Appeals,

Fifth Circuit.

No. 94-30064.

Summary Calendar.

Lawrence E. JAMES, as executor of the Estate of Ollie James, Deceased, Plaintiff-Appellant,

v.

LOUISIANA LABORERS HEALTH AND WELFARE FUND, Defendant-Appellee.

Aug. 26, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA, JOLLY and BARKSDALE, Circuit Judges.

PER CURIAM:

This case arose as an action under section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) to recover benefits allegedly due under the terms of an ERISA employee benefit welfare plan. Plaintiff appeals from a summary judgment granted in favor of the Louisiana Laborers Health and Welfare Fund ("the Fund"). Plaintiff asserts that the plan administrators abused their discretion in denying his claim for benefits based on a provision which excludes medical benefits for "injuries sustained in the course or the commission of a felony." For the following reasons, we AFFIRM.

FACTS AND PROCEEDINGS

*1. Background*

The facts in this case are largely uncontested. The Louisiana Laborers Health & Welfare Fund is a multiemployer, jointly-administered employee benefit welfare fund established and administered pursuant to section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), on the basis of collective bargaining agreements entered into between various Locals of the Laborers International Union and employer members of the New Orleans Chapter of the Associated General Contractors of America, Inc. The plan administrators are the fund's six trustees, three of whom are designated by contributing employers and three of whom are designated by participating Unions. The

fund is self-insured and employs no outside insurer to underwrite its plan benefits. The plan explicitly gives the Trustees discretion to interpret the plan and make determinations concerning claims.

On June 8, 1989, Ollie James, a participant in the Plan, sustained injuries as a result of a gunshot wound to his chest. The facts surrounding the incident, and which eventually led to the denial of benefits, come from the New Orleans Police Department Police Report.

Officers arrived at 9:10 a.m. and found the victim, Ollie James, lying on his back next to a fence in front of 5223 Tchoupitoulas. A woman, later identified as Irma Jackson, ran up to the officers and said, "Help him, he's dying. I shot him." Suspect was handcuffed and placed in the back seat of 292. Officer Aldridge interviewed the arrested subject after advising her of her rights, while Officer Curet tended the victim. EMS was ordered on a Code 3 as the victim had been shot in the chest and was losing consciousness.

Arrestee Jackson stated that she and her common law husband, who both reside at 5221 Tchoupitoulas with her grandfather, Sidney Gaulden (also a witness), had been arguing over money all morning. They had both been drinking earlier at F & M Patio Bar, Tchoupitoulas, and they went home after being ejected from the bar. She stated she had left the house to get away from James because he had begun to hit her in the face and side. He followed her outside and grabbed her to keep her from walking off. He threw her to the ground directly in front of their house. He pulled a knife from his pants and began to threaten her with it. He kicked her in the left side and left leg as she tried to avoid the knife. A neighbor, later identified as Raymond Stewart, was walking to a store with his two daughters, and he approached the couple and tried to stop the fight.

The grandfather approached the two and had in his right hand a gun which he pointed at the victim, telling him to stop kicking the arrestee. The arrestee jumped up, grabbed the gun from her grandfather, and as the victim tried to grab the arrestee, she shot him in the stomach. She dropped the gun and ran across the street. The victim picked up the gun and chased the arrestee across the street and then back again to the sidewalk in front of 5223 Tchoupitoulas, where he collapsed. Aldridge then interviewed witness/neighbor Raymond Stewart, 5109 Tchoupitoulas, who stated that he was walking with his two daughters to the store when he saw the arrestee & the victim fighting on the sidewalk. The victim was kicking the arrestee. Stewart stated he saw something clutched in victim's right hand but could not identify it. He said that he said to the victim, "Leave her alone." Victim replied, "The bitch took my money, she's on that coke." Stewart said, "Talk to her father." He then turned around and took his two girls home. When he was about fifty feet from the scene, he heard a popping sound, which he believed was a gunshot, and he hurried home never looking back. Aldridge then interviewed grandfather, Sidney Gaulden, 5221 Tchoupitoulas, who stated that his granddaughter and her common law husband constantly fought. He saw them fighting in the house and she ran outside to avoid being struck by victim. Victim found her outside. Gaulden stated he heard them fighting outside, so he took his .22 caliber revolver outside to scare off the victim. He saw the victim kicking the arrestee who was on the ground. He saw the victim had a knife in his right hand and he told the victim to go away and leave the arrestee alone. The arrestee jumped up and grabbed the gun from his hand and fired one shot at the victim. Victim picked up gun after arrestee dropped it, and ran across the street after her. Victim returned to house behind arrestee and collapsed on the sidewalk.

According to the police report, Jackson sustained scratches to her face and bruises to her left side. In connection with the incident, she was charged with attempted second degree murder, and

subsequently pleaded guilty to aggravated battery. Ollie James was neither arrested, charged, nor convicted as a result of the incident. As a result of the gunshot wound, he required hospitalization and extensive medical treatment, but this injury was not fatal. On March 12, 1990, Jackson, while out on parole, stabbed and killed Ollie James in Bogalusa, Louisiana. James's claims are being advanced by his estate to pay unpaid hospital bills.

## 2. *The Plan's Decisions*

By letter dated February 20, 1990, the Plan Office confirmed receipt of medical claims submitted by Ollie James totaling in excess of $358,000 for injuries sustained on June 8, 1989. The medical claims submitted by James were for services rendered by various providers in the total amount of $359,005.52. By certified letter dated April 12, 1990, the Plan notified James of the denial of payment of all claims related to the June 8, 1989 injury, based on the Fund's exclusion for injuries sustained in the course of the commission of a felony. The denial letter concluded that Aggravated Battery (La.R.S. 14:34) and Second Degree Battery (La.R.S. 14:34.1), both felonies, could reasonably have been at issue.

On September 27, 1990, Lawrence James, as Executor of the Estate of Ollie James, appealed the Board's decision. However, the Trustees determined the appeal presented no additional evidence that would support reversal of its prior decision and affirmed its denial of benefits. The denial stated in pertinent part:

> In this case, two witnesses and Ms. Jackson stated that Mr. James kicked Ms. Jackson during the incident. Jurisprudence has established that kicking a victim may constitute an aggravated battery. The courts have reasoned that shoes are considered a dangerous weapon within the meaning of the aggravated battery statute if it were found that in the manner they were used it is calculated or likely to produce great bodily harm.

## 3. *Court Proceedings*

Finding that the Fund denied James his benefits without conducting an investigation of the facts and circumstances of the alleged felony, the district court remanded the case back to the Fund on November 19, 1992. The court was again not satisfied with the diligence of the investigative effort of the Fund, when it attempted to support its findings through inferences drawn from the police report, and remanded for the second time on June 8, 1993. The Fund was ordered to undertake a

more rigorous and thorough investigation, in keeping with the fiduciary duty owed to plaintiff. After finally complying with the district court's mandate, the Fund provided the findings of a private investigator to support their denial of benefits based on the felony exclusion.

> [T]he Board of Trustees finds that Ollie James kicked Irma Jackson, while standing above her and brandishing a knife, with hard-soled shoes, either dress shoes or steel-toed work boots, in a manner that was calculated and did result in great bodily harm to Irma Jackson who sustained bruises from approximately her breastbone to her hips on her left side, complicated by her diabetic condition.

Satisfied that the Fund had, although belatedly, gathered sufficient evidence to support its denial of James' benefit claim on the basis that the injuries were sustained in the course or commission of a felony, the district court held the Fund's decision to be legally correct, and granted summary judgment for the Plan.

## DISCUSSION

The Plan gives the trustees of the Fund the express authority to determine questions of eligibility for benefits. As a result, we are bo und to review the Fund's decision under an abuse of discretion standard. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). In situations where the administrator is acting under a possible or actual conflict of interest, that factor must also be weighed in determining whether there is an abuse of discretion. *Id.* at 115, 109 S.Ct. at 956-57. Such a review involves two steps. First, this Court must determine whether the Fund's decision was legally correct. *Kennedy v. Electricians Pension Plan, IBEW No. 995,* 954 F.2d 1116, 1124 (5th Cir.1992); *Batchelor v. International Brotherhood of Electrical Workers Local 861,* 877 F.2d 441, 442-43 (5th Cir.1989). If the answer to this question is no, then the court must determine whether, even though legally incorrect, the decision amounts to an abuse of discretion. *Kennedy,* 954 F.2d at 1124. For the following reasons, we find the Fund's conclusion to be legally correct, and therefore need not address any abuse of discretion.

The *Kennedy* case instructs us that, in determining the legally correct interpretation of the plans, we should consider: (1) whether the interpretation is consistent with a fair reading of the plans; (2) whether there has been uniformity in construction of the plans; and (3) whether the interpretation results in any unanticipated costs to the plans. *Kennedy,* 954 F.2d at 1121.

Since the parties have not submitted evidence of other occasions where the Fund denied benefits based on the injury arising during the course of a felony, or that the denial of benefits on this basis results in substantial unanticipated costs, we will concern ourselves only with whether the Fund's reading of the Plan was fair and reasonable.

Under Louisiana law, aggravated battery is defined as "battery committed with a dangerous weapon." La.R.S. 14:34. A dangerous weapon is defined as any "substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily injury." La.R.S. 14:2(3).

The Fund found, after conducting their own investigation, that James used his shoes in a manner calculated or likely to cause death or great bodily harm when he stood above Jackson and kicked her left side as she lay on the ground. Such a finding comports with a fair and reasonable interpretation of the Plan in light of the Louisiana criminal cases finding shoes to be dangerous weapons. *Interest of Ruschel,* 411 So.2d 1216 (La.App. 4th Cir.1982) (steel-toed boot used in "brutal" attack); *State v. Taylor,* 485 So.2d 117 (La.App. 2d Cir.1986) (tennis shoes used to stomp victim with such force that shoe marks were left on face).

Appellant contends that by remanding the case twice, and allowing the Fund to gather decision-driven supplemental findings, the district court abused its discretion. Moreover, the appellant argues that the plan administrators' actual conflict of interest influenced their decision, as reflected in the minutes of the board's meeting.[1] Any inferences of bad faith or conflict of interest are

---

[1]The Plan's trustees and attorneys first considered James' request for coverage at a meeting held on February 20, 1990. The minutes of this meeting provided that:

> Mr. Berthold presented another claim [James'] for review. He reported that the claim amounted to $220,000 and the liability could be far more. Mr. Berthold stated that the circumstances surrounding the claim were that Ollie James had been drinking and began beating his common law wife (Erma [sic] Jackson). Mr. James threatened Ms. Jackson with a knife. Ms. Jackson shot Ollie James. The common law wife was booked and the victim, Ollie James was taken to Touro where he spent 47 days in intensive care.... Acting Chairman Boh asked if the same application as the previous claim [denial on the basis of the same "commission of felony" provision] could be applied since a knife was being used to attack another individual. Ms. Healey [one of the Fund's attorneys] stated that this was a more difficult claim since the common law wife was arrested, whereas no action was taken against the claimant.... [Ms. Voigt, another Fund attorney] stated that

weighed not in the determination of whether the decision was incorrect, but in reviewing a possible abuse of discretion. *Firestone,* 489 U.S. at 113-15, 109 S.Ct. at 956. As previously mentioned, since we find the Fund's decision that James was injured during the commission of a felony to be legally correct, we need not address issues that address the manner in which the Fund arrived at its decision.[2]

Appellant further asserts that James' conduct cannot be considered a "felony" since the legal authorities did not prosecute the matter. The failure of the state criminal justice system to prosecute an individual for alleged felonious activity by no means constitutes an affirmative finding that the individual is absolved of any crime. Unlike the Plan, the State has neither the resources nor the obligation to prosecute a suspect in connection with each and every felony, potentially or actually committed. The illogic of this rule was also criticized by our brethren on the Seventh Circuit, who present an example "in which a Plan participant is killed during the commission of a felony. As the state cannot prosecute a dead man, the trustees would be unable to deny benefits although the injuries were not covered by the Plan." *Berg v. Board of Trustees, Local 705 International Bro. of Teamsters Health and Welfare Fund,* 725 F.2d 68, 70 (7th Cir.1984).

## CONCLUSION

Appellant has not pointed to any evidence in the record to prove that the Fund's decision to deny benefits did not meet with the *Kennedy* criteria. They did not present any evidence of the Fund's treating other similar employees' claims differently. Appellant did not submit evidence that Fund's

---

before an opinion could be given, the facts would have to be closely reviewed and possibly a hearing would be necessary to elicit more facts.

The appellant seems to read these minutes to evidence a predetermined mindset to find a way to deny James' claim. We do not benefit from such intuition. On the contrary, it implies an intention to withhold a decision for a further investigation of the facts. The fact that no factual review or hearing was conducted until the second remand amounts to, as the district court puts it, "at worst mere sloppiness and laziness and at best, an attempt to avoid expenses in administering the Plan."

[2]Appellee points out that under this Fund, they hold no potential for any type of pecuniary benefit by denying appellant's claim. The assets are held in trust for the sole and exclusive benefit of the Fund's participants. The only conflict the trustees have is their legally recognized dual responsibility toward both the beneficiaries and the preservation of the corpus of the trust. *See Brown v. Blue Cross,* 898 F.2d 1556, 1567-68 (11th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991) (citing *De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1191 (4th Cir.1989)).

decision resulted in unanticipated costs to plaintiff. Moreover, we hold that the decision of the trustees complied with a full and fair reading of the plan that the plaintiff's injuries were incurred while in the commission of a felony.

After reviewing the Fund's factual determination, including the Fund's investigative report, our own reading of the plan, and after careful considerat ion of any potential or actual conflict of interests under which the plan administrators were acting, we are persuaded that the Fund gave the plan its legally correct interpretation. Accordingly, the Fund's decision to deny the plaintiff's benefits on the grounds that James was in the commission of aggravated battery at the time he sustained his injuries was not an abuse of discretion in either their factual or their legal determinations. The grant of summary judgment was proper.

AFFIRMED.