**Ralph E. HELTON, Plaintiff,**

v.

**ACS GROUP, and J & S Cafeterias of Pigeon Forge, Inc., Defendants.**

No. 3:95–CV–0614.

United States District Court, E.D. Tennessee.

March 27, 1997.

Memorandum and Order on Reconsideration March 27, 1997.

·Gary E. Brewer, Brewer & Terry, PC, Morristown, TN, for Plaintiff.

Thomas C. McKee, Edward T. Brading, Herndon, Coleman, Brading & McKee, Johnson City, TN, for Defendants.

### MEMORANDUM OPINION

JORDAN, District Judge. ' ·

This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* (ERISA). The defendants filed a motion for

summary judgment [doc. 8; supporting brief, doc. 9; reply brief, doc. 13] to which the plaintiff responded in opposition [doc. 11]. The court has heard the oral argument of counsel for the parties, and is prepared to rule on the defendant's motion.

The plaintiff Mr. Helton was an employee of the defendant J & S Cafeterias of Pigeon Forge, Inc. (J & S). As such an employee, he participated in an employee welfare benefit plan consisting of a self-funded health care plan provided by J & S and administered by the defendant ACS Group (ACS).[1] As a result of a beating he received on May 9, 1994, the plaintiff submitted a claim for medical insurance benefits under this plan. The defendants admit that they denied the plaintiff's claim in reliance on two exclusions from coverage stated in the plan documents, one referring to "charges incurred for sickness or injury suffered in connection with or arising from the commission of a felony by a Covered Person," and one referring to "charges incurred for injuries sustained as the result of the misuse of a controlled substance where the controlled substance was not prescribed by a physician."

There is no dispute in this civil action concerning the applicability of ERISA or the court's jurisdiction of the subject matter under 28 U.S.C. § 1331. The court finds that this civil action does arise under ERISA, and that it therefore does have subject-matter jurisdiction of this action. At oral argument, counsel for the plaintiff conceded that review of the benefits claim denial in this case is under the more deferential arbitrary and capricious standard. *Firestone Tire and Rubber Company v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 694 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990).[2] Neither the plaintiff nor the defendants have suggested that this action is not properly before this court after full review of the plaintiff's claim in accordance with the administrative procedures required by the plan.

The administrative record, supplied as an exhibit to the declaration of ACS' Vice President of Claims Teresa Seymour [doc. 8, attachment], and compiled during the investigation of the plaintiff's claim, shows that on March 8, 1994, the Sevier County, Tennessee Circuit entered a restraining order in a civil action styled *Anna Faye Helton v. Ralph Eugene Helton,* restraining Mr. Helton, the plaintiff in this civil action, from calling, harassing, or coming about his wife or her family wherever the wife might be, or from interfering with his wife's physical custody of the parties' two minor children. On March 25, 1994, Mr. Helton pleaded guilty in the Sevier County Trial Justice Court to a mis-

1. The defendants' submissions to the court show that J & S, the employer, is the plan administrator of the plan in which the plaintiff participated, and that ACS is the plan supervisor responsible for claims receipt and review by reason of a delegation of these responsibilities made by an individual, the president of J & S, identified as the plan coordinator. Neither defendant has disputed that it is a proper party defendant to this civil action, and neither defendant has raised an issue that the plaintiff failed to sue some party without whom complete relief could not be granted.

2. The pertinent plan language [*see* doc. 8, decl. of Teresa Seymour, ex. A. at 1] provides, "The Plan Administrator has the sole authority and responsibility to review and make final decisions on Plan matters such as benefit adjudications, eligibility for coverage determinations and construing terms."

In his brief in response to the motion for summary judgment [doc. 11 at 3], the plaintiff suggests that determining whether the arbitrary and capricious standard applies in this case is inappropriate at the stage of summary adjudication, and should be left to be decided at trial. This argument is directly contrary to the standard procedure of deciding ERISA cases on motions under Fed.R.Civ.P. 56, a procedure employed because a district court's review of an employee welfare benefit plan's benefits claim denial, even when it is *de novo* review, is had on the record compiled during administrative consideration of the claim by the responsible administrator or fiduciary, not on new evidence presented in court. *See Perry v. Simplicity Engineering,* 900 F.2d 963, 966 (6th Cir.1990). "*Bruch* does not require district courts to hear and consider evidence not presented to the plan administrator in connection with a claim." *Id.* This also answers the plaintiff's "question of the propriety of including for the Court's review documents actually reviewed by the Plan Administrator but which are inadmissible under the Federal Rules of Evidence and are legally prejudicial." [Doc. 11 at 4.]

demeanor charge of simple assault, the charge being that Mr. Helton, while driving a pickup truck, deliberately struck his wife's motor vehicle multiple times. The trial justice court imposed a sentence of 11 months and 29 days suspended to 10 days and probation for 11 months and 29 days, and restrained Mr. Helton from any further contact with his wife. On April 20, 1994, the Sevier County Circuit Court entered an order in the divorce action leaving a grandmother the temporary custodian of the parties' minor children, providing that Mrs. Helton "is allowed to return to the marital residences (sic) if she wishes to do so to the exclusion of the husband which privilege is not to be abused," stating certain visitation rights concerning the minor children, requiring both parties, upon their agreement, to submit to drug screen tests, and enjoining "all parties their heirs and assigns ... from interfering with the enforcement of this order." [3]

The plaintiff Mr. Helton did not obey the court orders concerning coming about his estranged wife; he suffered the beating out of which his claim for welfare benefit plan benefits arises in this case when he went purposefully to the lakeside residence at which his wife was staying. The police report of the May 9, 1994, incident [decl. of Teresa Seymour, ex. C] states that Mr. Helton requested a police officer to escort him to the lakeside residence because Mr. Helton anticipated fighting with two males there; that the dispatched officer did not meet the plaintiff before the fight at the residence, but met him afterwards when the plaintiff was driving his own vehicle, and that the plaintiff then told the officer that he had been struck in the head by the fist of one of the males at the residence; and that the

witnesses at the residence told the officer that the plaintiff had started the fight by striking his wife with a stick.

Transcripts of telephone conversations apparently recorded by the plaintiff [id., ex. D] indicate violent, expletive-filled conversations between the plaintiff and his estranged wife and some of the other individuals at the lakeside residence just before the fight. The plaintiff initiated at least some of these telephone conversations. Any reasonable reading of these transcripts would indicate that the plaintiff knew or should have known that his arrival at the residence would lead to violence. Transcripts of police interviews of witnesses [id., ex. F] reveal varying recollections of the fight; there is some evidence that one man held the plaintiff while another struck him in the face and head, but there is also evidence that this did not occur, and that the plaintiff was struck only while his hands were free and he was fighting.

After the plaintiff commenced this civil action, the defendants deposed him [doc. 8, attachment, *Deposition of Ralph Eugene Helton*, January 30, 1996 (hereinafter "Helton depo.")]. According to the ACS Vice President of Claims, Ms. Seymour, the defendant ACS again considered the plaintiff's claim, and concluded, "based on the deposition alone and separate and apart from [the] previous investigation," that on May 9, 1994, "Mr. Helton committed aggravated assaults against his wife and against Mr. Stephen Jackson and that the injuries Mr. Helton received were connected with or arose out of these aggravated assaults." [Decl. of Teresa Seymour at 5.] The defendant ACS therefore stood on its decision that the commission-of-a-felony exclusion in this welfare benefit plan applies in this case.[4]

3. These three judicial orders are referred to in Ms. Seymour's declaration, but appear in the record in this court as exhibits 2, 3 and 4 to the transcript of the deposition of Ralph Eugene Helton taken on January 30, 1996, also submitted as an exhibit to the defendants' motion for summary judgment in this civil action.

4. While "[i]t is true that when reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made," *Miller v. Metropolitan Life Insurance Company*, 925 F.2d 979, 986 (6th Cir.1991), the court has con-

sidered this deposition testimony for two reasons. First, the defendants treated the deposition as providing additional evidence, and used it to reconsider the denial of the plaintiff's benefits claim. *See id.* (district court properly considered not only the medical evidence in the administrative record, but also what happened during the administrative process, including the plaintiff's failure to respond to the defendant's request for additional medical evidence). Second, the plaintiff here also relies on his deposition testimony. [*See* doc. 11, ex. 6.] In any event, if this deposi-

At his deposition, the plaintiff testified that he knew that the Sevier County Circuit Court's restraining order required him to stay away from his wife. [Helton depo. at 35.] He understood that he was excluded from the lakeside residence by the other order entered by that court. [Id. at 38.] According to the plaintiff, when he first talked by telephone with his wife on the date he was injured, she invited him to come to the lakeside residence. He did not know during this conversation that there were others there, but he decided not to go in light of the restraining order. [Id. at 58.] It was only after the violent telephone conversation with one of the men at the lakeside residence that the plaintiff decided to go there.

As is stated above, the plaintiff called the police before he left his mother's home to go to the lakeside residence. [Id. at 59.] Once he arrived at the lakeside residence, the plaintiff again told someone to call 911, "[b]ecause [he] knew there was going to be trouble." [Id. at 75–76.] The plaintiff's reason for going to the lakeside residence was to remind his wife of the divorce judge's instruction that she not have "wild parties" there, but the plaintiff knew that his children were not there, he having left them with his mother. [Id. at 61–61.] When the plaintiff left his mother's home to go to his wife's residence, he put a stick several feet long in the bed of his pickup truck, for "protection." [Id. at 66.] "If I'd had a gun, I would have used it." [Id. at 65.] The plaintiff admits that at the outset of the confrontation on May 9, 1994, he slapped his wife several times in the face. [Id. at 96.]

Much of the parties' arguments in support of and in opposition to the defendants' Rule 56 motion deals with the definition of assault in Tennessee criminal law. The plaintiff devotes much argument to the facts that the benefits claim denials in this case were made by individuals with little knowledge of crimi-

nal law, that these individuals did not take into account the criminal-law standard of proof beyond a reasonable doubt, and that the plaintiff was neither charged with nor convicted of a felony as a result of his conduct on May 9, 1994. The plaintiff concedes that the acting plan administrator sought the advice of counsel concerning aggravated assault as it is defined in Tennessee law, but faults the defendants for not having consulted with the Tennessee Attorney General or with the district attorney general in the district in which this fight occurred. [See doc. 11 at 7.] By inviting this court to try the factual issues regarding whether Mr. Helton committed an aggravated assault on the day he was injured, the parties appear to ignore the fact that ERISA, not Tennessee insurance or criminal law, governs this civil action.[5]

A plan administrator's denial of an ERISA welfare benefit plan benefits claim is not arbitrary or capricious if it is rational in light of the plan's provisions. *Miller, supra* n. 4, at 984 (citation omitted). When discretion is granted to a plan administrator or fiduciary operating under a conflict of interest, the conflict must be weighed in determining whether there was an abuse of discretion. *Bruch, supra*, 489 U.S. at 115, 109 S.Ct. at 956–57. In this case, in which the plan language grants discretionary authority not only to construe plan terms, but also with respect to "final decisions on Plan matters such as benefit adjudications [and] eligibility for coverage determinations," *see supra* n. 2, the more deferential standard of review applies to administrative fact-finding, too.[6]

This last point addresses the plaintiff's argument that this court should grant him relief because the defendants relied on witnesses who are not credible. Assuming that a benefits claim denial can be arbitrary or capricious when founded on incredible evi-

---

tion were excluded from consideration, the court's conclusion would not be different.

**5.** The paucity of ERISA case-law authorities in the parties' briefs made decision in this case more difficult than it needed to be.

**6.** The court is aware that the decision in *Perez v. Aetna Life Insurance Company,* 96 F.3d 813 (6th

Cir.1996), has been vacated for *en banc* consideration of the case. 106 F.3d 146 (6th Cir.1997). The issue in *Perez,* however, is whether *de novo* review under Bruch extends beyond plan interpretation or the application of law to facts to administrative fact-finding. In the case at bar, the plaintiff is not entitled to *de novo* review of any aspect of the denial of his benefits claim.

dence, the record here shows that fair, good-faith consideration was given to the conflicting stories concerning the May 9, 1994, incident. The police report of the incident [decl. of Teresa Seymour, ex. C] recites that Mr. Helton struck Mrs. Helton first, several times with a stick, and that once they were engaged in fighting, he kicked her in the stomach. Mr. Helton admits that he armed himself with a stick before leaving for his estranged wife's residence, and his testimony that it was a rotten stick and therefore a very inadequate weapon does not ring true when it is considered that he put the stick in his truck for "protection" after several angry, violent telephone conversations, and after deciding to proceed to the lakeside residence even though he anticipated trouble enough to ask for a police escort there.

■ The court likewise finds no arbitrariness, capriciousness, or abuse of discretion in the defendants' application of Tennessee criminal law to the facts disclosed by the evidence in the administrative record. Neither the restraining order entered by the Sevier County Circuit Court nor the probation order entered by the Sevier County Trial Justice Court enjoined or restrained the plaintiff in express terms from causing or attempting to cause bodily injury or from committing or attempting to commit an assault. *See* Tennessee Code Annotated § 39–13–102(a)(3), now T.C.A. § 39–13–102(c). One can conclude reasonably, however, albeit perhaps not with the precision required of a court trying an individual accused of a felony, that an order of a divorce court and an order entered upon a plea of guilty to a charge of misdemeanor assault to stay away from one's estranged wife includes an order not to commit or to attempt to commit an assault against her, considering that the definition of simple (misdemeanor) assault includes "[i]ntentionally or knowingly caus[ing] physical contact with another [when] a reasonable person would regard the contact as extreme-ly offensive or provocative." T.C.A. § 39–13–101(a)(3). On the basis of such a rational analysis, and on the basis of the record evidence, a conclusion that Mr. Helton committed an aggravated (felony) assault upon Mrs. Helton by driving to her residence, striking her with a stick, and kicking her, all with full knowledge of the orders requiring him to stay away from her, is anything but arbitrary or capricious. Furthermore, one of the alternative definitions of aggravated assault in the Tennessee statute, intentional or knowing commission of a simple assault while using or displaying a deadly weapon, T.C.A. § 39–13–102(a)(1)(B), appears reasonably to apply to the plaintiff's conduct in wielding or using the stick against his wife; as is stated above, the defendants were not compelled by this record to accept the plaintiff's characterization of the weapon which he carried for "protection." [7]

In *James v. Louisiana Laborers Health and Welfare Fund*, 29 F.3d 1029 (5th Cir. 1994), a similar case, the plan participant was shot by his wife after he threw her to the ground, threatened her with a knife, and kicked her. According to the police report, *see id.* at 1031, the wife jumped up, grabbed a revolver from her grandfather, and, as the plan participant tried to grab her, shot the participant in the stomach. The wife then dropped the gun and ran across the street, the participant picked up the gun and chased his wife across the street and back to in front of their residence, and the participant then collapsed in front of the residence. The plan participant's wound was not fatal, but he required extensive medical treatment. The wife, charged with attempted second-degree murder, pleaded guilty to aggravated battery, while the plan participant "was neither arrested, charged, nor convicted as a result of the incident." *Id.* at 1032.

The defendant plan in *James* denied the participant's benefits claim on the basis of a

---

7. The definition of "deadly weapon" in Tennessee criminal law, T.C.A. § 39–11–106(5), includes "anything manifestly ... adapted for the purpose of inflicting death or serious bodily injury," and "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." The definition in turn of "serious bodily injury," T.C.A. § 39–11–106(33), includes bodily injury involving extreme physical pain, protracted or obvious disfigurement, or protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty. It is a reasonable conclusion that if Mr. Helton's stick could have blinded one of Mrs. Helton's eyes, it was a deadly weapon.

plan exclusion for injuries sustained in the course of the commission of a felony. After the participant commenced his civil action, the district court remanded the case to the defendant plan for a more complete investigation, then affirmed the denial of the benefits claim. The court of appeals affirmed the district court's award of summary judgment in favor of the defendant plan.

Applying 5th Circuit law that the defendant plan's decision was legally correct if consistent with a fair and reasonable reading of the plan, the court of appeals in *James* held that it was reasonable to conclude that the participant's kicking of his wife with hard-soled shoes, either dress shoes or steel-toed work boots, was battery committed with a dangerous weapon, *i.e.,* aggravated battery, under Louisiana law. Louisiana statutory law defined a dangerous weapon as any substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily injury. There was Louisiana appellate case-law authority holding that shoes used to kick a victim can come within this definition.

The *James* court dismissed the participant's argument that the fact that he had not been prosecuted for a felony as a result of the incident precluded the plan from relying on the felony exclusion. "The failure of the state criminal justice system to prosecute an individual for alleged felonious activity by no means constitutes an affirmative finding that the individual is absolved of any crime." *Id.* at 1034. Citing *Berg v. Board of Trustees, Local 705 International Brotherhood of Teamsters Health and Welfare Fund,* 725 F.2d 68, 70 (7th Cir.1984), the *James* court noted that the participant's argument would lead to the illogical result that a plan participant covered under his or her plan for death benefits and killed during the commission of a felony could never be denied such benefits on the basis of a felony exclusion. *James, supra,* 29 F.3d at 1034.

The plaintiff's arguments, in short, fail to overcome the plain language of this plan exclusion and the fair and reasonable deter-

mination made at the administrative level in this case. The plan exclusion refers to a felony, not a conviction of a felony; [8] the plan administrator was not required to pay the plaintiff's benefits claim merely because of the exercise of prosecutorial discretion not to charge the plaintiff with a felony. The defendants consulted with counsel; there was no legal requirement that the plan administrator abdicate responsibility for making a decision on the plaintiff's claim to the Tennessee Attorney General or to a district attorney general. The defendants gave full consideration to conflicting evidence, including reconsidering the benefits claim denial after the plaintiff's deposition, a fact which shows the absence of bad faith or an abuse of discretion. In the absence of bad faith or an abuse of discretion, the plaintiff's suggestion of a conflict of interest is not enough, standing alone, to overturn a fair and reasonable benefits claim denial.

For the reasons stated, the court finds that the defendants properly relied in this case on the felony exclusion in the applicable plan. This renders it unnecessary to address the defendants' reliance on the exclusion for injuries sustained as a result of abuse of a controlled substance. The plaintiff is not entitled to any relief under ERISA in this case, and is not entitled to any relief under State law in light of ERISA preemption. *See Davis, supra,* 887 F.2d at 696–97; *Bishop v. Provident Life and Casualty Insurance Company,* 749 F.Supp. 176 (E.D.Tenn.1990) (*per* Jarvis, USDJ). The court will accordingly grant the defendants' summary judgment motion, and dismiss this civil action.

### *MEMORANDUM AND ORDER ON RECONSIDERATION*

On March 27, 1997, the court filed its memorandum opinion and order [docs. 15 and 16], ruling in favor of the defendants in this civil action governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* (ERISA). The plaintiff has now filed a motion to reconsider [doc. 17]. The court finds

---

**8.** *See Berg, supra,* 725 F.2d at 70, concerning the legal distinction between a felony and a conviction: "A 'felony' occurs upon commission of the

proscribed acts regardless of whether there later is a successful prosecution."

it unnecessary to delay ruling on this motion to reconsider for the period of time allowed for response by L.R. 7.1, E.D. Tenn., and finds that oral argument would not assist it in ruling on the motion to reconsider.

▅▅▅▅ The court reads a motion for reconsideration as a Fed.R.Civ.P. 59(e) motion to alter or amend a judgment. *See Smith v. Hudson,* 600 F.2d 60, 62–63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

> Rule 59(e) provides a procedure for correcting manifest errors of law or fact or considering the import of newly discovered evidence.
>
> A motion to alter or amend judgment made pursuant to Fed.R.Civ.P. 59(e) may be made for one of three reasons:
>
> 1) An intervening change of controlling law;
>
> 2) Evidence not previously available has become available; or
>
> 3) It is necessary to correct a clear error of law or prevent manifest injustice.
>
> A motion under Rule 59(e) is not intended to be utilized to relitigate issues previously considered. Neither should it be used as a vehicle for submitting evidence which in the exercise of reasonable diligence could have been submitted before. [W]here the movant is attempting to obtain a complete reversal of the court's judgment by offering essentially the same arguments presented on the original motion, the proper vehicle for relief is an appeal.

*Keweenaw Bay Indian Community v. State of Michigan,* 152 F.R.D. 562, 563 (W.D.Mich. 1992); *affirmed,* 11 F.3d 1341 (6th Cir.1993) (citations omitted).

▅▅▅▅ *See also In re Oil Spill by the "Amoco Cadiz" off the Coast of France on March 16, 1978,* 794 F.Supp. 261, 267 (N.D.Ill.1992), *affirmed without opinion,* 4 F.3d 997 (7th Cir.1993) (citations omitted):

> Motions for reconsideration serve a limited function. They are ordinarily granted only to correct errors of law or fact or to present newly discovered evidence which could not have been adduced during the pendency of the motion.

> Motions for reconsideration cannot be used to introduce new legal theories for the first time, to raise legal argumentation which could have been heard during the pendency of the previous motion, or to present evidence that could have been adduced during the pendency of the original motion. Finally, motions to reconsider are not at the disposal of parties who want to "rehash" old arguments.

The plaintiff's arguments stated in his motion to reconsider are arguments which the plaintiff advanced unsuccessfully in opposition to the defendants' motion for summary judgment in this case. In his motion to reconsider, the plaintiff concedes that this civil action is governed by ERISA, "but submits that ... ERISA does not render the Federal Rules of Civil Procedure void, invalid, or irrelevant ...." This court agrees; the plaintiff fails to recognize that the issue before this court in this civil action was not whether there were factual disputes in the administrative record compiled during the plan administrator's consideration of the plaintiff's claim for benefits under an employee welfare benefit plan, but was instead whether the claim denial in issue should be overturned or upheld under the arbitrary and capricious standard of review. *See, e.g., Miller v. Metropolitan Life Insurance Company,* 925 F.2d 979, 984 (6th Cir.1991).

The plaintiff's other arguments concerning the meaning of the word "felony" as used in the plan in issue and the defendants' alleged conflict of interest were given full consideration in the court's memorandum opinion filed on March 27, 1997. The plaintiff relies on a note in the claim record which reads, "Is there a chance TennCare will absorb costs?" This does not rise to a showing of bad faith or an abuse of discretion, and does not provide a sufficient ground for denying the defendants' motion for summary judgment or for overturning the court's ruling upon reconsideration, in light of the fact that the denial of the plaintiff's claim upon the entire record was consistent with a fair and reasonable interpretation and application of the plan in issue. The court accordingly finds

the plaintiff's motion to reconsider not well taken, and it is **DENIED.**