**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No.  00-50124

LOUIS D. HEIMANN,

Plaintiff,

VERSUS

THE NATIONAL ELEVATOR INDUSTRY PENSION FUND, ET AL.,

Defendants;

LOUIS D. HEIMANN, JR. and LOU HEIMANN,

Plaintiffs-Appellants,

VERSUS

INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS and KEN BURKETT,

Defendants-Appellees.

Appeal from the United States District Court
For the Western District of Texas
(A-94-782-JN c/w A-95-CV-548-JN)
January 29, 2001

Before KING, Chief Judge, and HIGGINBOTHAM and DUHÉ, Circuit Judges.

PER CURIAM:[1]

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellants Louis D. Heimann, Jr. ("Mr. Heimann") and his wife, Lou Heimann (together, the "Heimanns"), appeal the district court's grant of summary judgment in favor of the International Union of Elevator Constructors ("IUEC") and its agent, Ken Burkett ("Burkett"). We have reviewed the briefs, the record, and the district court rulings in this case, and finding no error, we AFFIRM.

BACKGROUND

Given that the procedural history in this case is somewhat complex, we will summarize only the facts and proceedings relevant to the issues in dispute in this appeal. Mr. Heimann was a member of the IUEC. In 1992, he took early retirement from Otis Elevator Company. Thereafter, he and his wife began receiving a pension and medical benefits under the National Elevator Industry Pension Fund and the National Elevator Industry Health Benefit Plan (the "Plans"). It is undisputed that the Plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plans provide for a suspension or termination of benefits if a retiree under the Plans engages in "disqualifying employment." However, a retiree would not be deemed to have engaged in disqualifying employment if he was employed solely as an elevator inspector for a governmental entity.

Two years after his retirement, Mr. Heimann began work for the University of Texas (the "University") as an elevator inspector. The Heimanns allege that Burkett, IUEC's business agent, intentionally misrepresented to the Plans that Mr. Heimann's work for the University constituted disqualifying employment under the Plans. They further contend that IUEC's and Burkett's actions caused the plan administrator to suspend Mr. Heimann's pension benefits and terminate the Heimanns' medical benefits. Mr. Heimann appealed the Plans' action to the trustees of the Plans (the "Trustees"), but they denied his appeal. Therefore, the Heimanns brought suit against IUEC and

2

Burkett, asserting state law claims of tortious interference with contract and intentional infliction of emotional distress. IUEC and Burkett removed the suit to federal court on the basis that the Heimanns' claims were preempted by ERISA. The district court denied the Heimanns' motion for remand.

In a separate case, Mr. Heimann sued the Plans in federal court under § 502 of ERISA, 29 U.S.C. § 1132, for wrongfully suspending and terminating his benefits. The district court consolidated this case with the Heimanns' state law claims against IUEC and Burkett.

IUEC and Burkett moved the district court to dismiss the Heimanns' state law claims under Fed. R. Civ. P. 12(b)(6), arguing that they were preempted by ERISA and that the Heimanns had failed to state a claim actionable under ERISA. On the recommendation of the magistrate judge, the district court granted the motion and dismissed these state claims, but it retained jurisdiction of Mr. Heimann's § 502 claim against the Plans.

Both Mr. Heimann and the Plans moved for summary judgment on this remaining § 502 claim. The magistrate judge issued a report and recommendations concluding that the determination by the Trustees that Mr. Heimann had engaged in disqualifying employment was legally correct, and that the suspension of the Heimanns' benefits under the Plans was justified. Before the district court could act on the magistrate's report, Mr. Heimann and the Plans settled the § 502 claim, and the district court granted the parties' joint motion to dismiss that claim. The Heimanns then appealed the earlier denial of remand and the 12(b)(6) dismissal of their separate, state law tortious interference and emotional distress claims against IUEC and Burkett.

A panel of this Court held that the removal of the suit against IUEC and Burkett was proper because the Heimanns' state law claims were expressly preempted by ERISA. Heimann v. National

3

Elevator Indus. Pension Fund, 187 F.3d 493, 502 (5th Cir. 1999). The panel opinion also held, however, that the Heimanns' allegations stated a claim under § 510 of ERISA, 29 U.S.C. § 1140, for unlawful interference with the Heimanns' rights under the Plans. Heimann, 187 F.3d at 509. Section 510 of ERISA provides in pertinent part:

> § 1140. Interference with protected rights
>
> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

Because the Heimanns had stated a claim under this section, the Court reversed the district court's 12(b)(6) dismissal of the action against IUEC and Burkett.

On remand to the district court, IUEC and Burkett moved the court to adopt a portion of the magistrate judge's report and recommendations with respect to Mr. Heimann's § 502 suit against the Plans, which had been issued before the parties settled that claim.[2] The report concluded that the Trustees' interpretation of the Plans was legally correct. Anticipating that the district court would adopt that conclusion, IUEC and Burkett moved for summary judgment. They asserted that if the Trustees' determination was legally correct, Mr. Heimann had engaged in disqualifying employment at the University, and therefore IUEC and Burkett could not have unlawfully interfered with the Heimanns' rights under the Plans in violation of § 510 of ERISA. After conducting a de novo review

---

[2]We reject the Heimanns' contention that IUEC's and Burkett's motion for the district court to adopt this portion of the magistrate judge's report "revived" the underlying cross motions for summary judgment in the settled § 502 claim against the Plans. Those motions were dismissed as moot when Mr. Heimann and the Plans settled that claim and the district court granted the parties' joint motion to dismiss. Therefore, the only rulings before us on appeal are the final judgment and order of the district court granting summary judgment to IUEC and Burkett.

4

of the case file, the district court adopted the magistrate's conclusions on legal correctness and rendered summary judgment for IUEC and Burkett.

DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same standards applicable in the district court. Duhon v. Texaco, Inc., 15 F.3d 1302, 1305 (5th Cir. 1994). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The district court based its analysis on our jurisprudence that holds that the court must apply a two-step standard of review to a trustee's interpretation of an ERISA plan. "First, this Court must determine whether the Fund's decision was legally correct. If the answer is no, then the court must determine whether, even though legally incorrect, the decision amounts to an abuse of discretion." James v. Louisiana Laborers Health and Welfare Fund, 29 F.3d 1029, 1032-33 (5th Cir. 1994) (citations omitted); see also Wildbur v. Arco Chem. Co., 974 F.2d 631, 637, modified on other grounds, 979 F.2d 1013 (5th Cir. 1992). In determining the legally correct interpretation of a plan, the court should consider: (1) whether the interpretation is consistent with a fair reading of the plan, (2) whether there has been uniformity in construction of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan. James, 29 F.3d at 1033; Wildbur, 974 F.2d at 638. If the administrator's or trustee's interpretation was not legally correct, the court should determine whether there has been an abuse of discretion by considering: (1) the internal consistency of the plan under the interpretation, (2) any relevant regulation formulated by the appropriate administrative agencies, and (3) the factual background of the interpretation and any inference of lack of good faith. Wildbur, 974 F.2d at 638. The abuse of discretion standard applies only when the plan grants the administrator or fiduciary the

5

authority to make a final and conclusive determination of a claim.  <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989); <u>Wildbur</u>, 974 F.2d at 636.

The district court apparently decided that this two-step review was appropriate in the instant case, but it did not reach the abuse of discretion step since it determined that the Trustees' interpretation was legally correct.  The Heimanns urge us to reverse the district court and hold that the Trustees' decision was not legally correct.  However, they contend that the abuse of discretion step should not apply to their § 510 claim, because the claim is one against third parties for interference with the Heimanns' rights under the Plans, not a suit for wrongful termination of benefits against the Plans.

The plan provision at issue in this case governs "disqualifying employment" for early retirees, justifying a termination of benefits:

> An Employee's monthly benefit shall be suspended for any month in which he worked or was paid for any employment in "Disqualifying Employment" before he has attained Normal Retirement Age.  "Disqualifying Employment" for the period before Normal Retirement Age is any work of the type covered by the trade or craft jurisdiction of the Union, including supervisory work, either for a person, firm or corporation, or employment or self-employment in any category of work in the elevator industry.  For purposes of this Article a Retired Employee shall not be considered to be employed in the elevator industry if he is employed solely as an elevator inspector for the federal government or a state, county or municipal government or other governmental unit or agency.

National Elevator Industry Plan of Pension Benefits § 7.07(a)(1).

The Trustees were informed by Mr. Heimann's supervisor that Mr. Heimann's duties at the University included inspecting all maintenance and repair work by the University's contractors to ensure compliance with contract requirements; signing time slips and authorizing payment of

maintenance contracts; and reviewing specifications in contracts sent out for bid to ensure that the contract would make elevators comply with state safety requirements. Burkett also sent a letter to the plan administrator informing him that Mr. Heimann's duties were similar to that of an elevator company "service manager." Based on this information, the Trustees determined that Mr. Heimann was not working solely as an elevator inspector, and therefore he was engaged in disqualifying employment. According to the Plans, the use of the phrase "any category of work in the elevator industry" in § 7.07(a)(1) means that "any job related to elevators" is disqualifying employment. Moreover, they argued that the inspector exception applies only to persons employed by governmental entities solely for the purpose of conducting annual and/or acceptance safety code inspections.

In contrast, the Heimanns argue that "any category of work in the elevator industry" signifies only employment specifically at an elevator company. Thus, Mr. Heimann's employment at the University, which obviously is not an elevator company, could not constitute disqualifying employment. They also contend that the Trustees' interpretation of the government inspector exception does not comport with either the elevator industry's guidelines for the duties of an elevator inspector, or the responsibilities of a government elevator inspector as set forth by the General Services Administration.

We think that on the facts of this case, the Trustees' interpretation of § 7.07(a)(1) is legally correct. First, their interpretation of both the phrase "any category of work in the elevator industry" and the inspector exception is plainly consistent with a fair reading of the Plans. Second, the Heimanns have not pointed out any evidence that the Trustees have not given § 7.07(a)(1) a uniform construction. Third, we agree with the district court that the record contains no evidence of whether

7

the differing interpretations of the Plans would result in unanticipated costs. Therefore, we base our determination of legal correctness on only two of the three relevant factors, which is permitted under our ERISA jurisprudence. See, e.g., Pickrom v. Belger Cartage Serv., Inc., 57 F.3d 468, 471 (5th Cir. 1995).

Because we have determined that the Trustees' interpretation was legally correct, we need not consider the Heimanns' argument that the abuse of discretion step of the analysis should not be applied in this case. Given our holding that the Trustees properly determined that Mr. Heimann engaged in disqualifying employment under § 7.07(a)(1), IUEC and Burkett could not have interfered with the Heimanns' rights under the Plans in violation of § 510 of ERISA, and IUEC and Burkett were entitled to summary judgment.

## CONCLUSION

Because we have determined that the Trustees' interpretation of the Plan was legally correct, the district court did not err in granting summary judgment for IUEC and Burkett. We therefore AFFIRM.

AFFIRMED.

8