**Willie H. KENNEDY, Plaintiff–Appellee,**

v.

**ELECTRICIANS PENSION PLAN, IBEW # 995, et al., Defendants–Appellants.**

**No. 91–3158.**

United States Court of Appeals, Fifth Circuit.

March 6, 1992.

M.J. Bodenhamer, W.P. Wray, Jr., Wray & Kracht, Baton Rouge, La., for defendants-appellants.

Charles Wm. Roberts, Steven S. Stockstill, Baton Rouge, La., for plaintiff-appellee.

Before HIGGINBOTHAM and BARKSDALE, Circuit Judges, and LITTLE, District Judge.[1]

LITTLE, District Judge:

Appellee Willie H. Kennedy brought a declaratory judgment suit against Appellant Trustees of the Electricians Pension Plan. Kennedy claims that the Trustees have miscalculated his years of coverage under the Plan, and that the miscalculation stems from a misinterpretation of the Plan. The district court sided with Kennedy,[2] an action which provoked the Plan to appeal to this court. We find no infirmity in the district court's decision and, accordingly, AFFIRM.

## I. Facts

This case was tried by stipulation of facts and submission of the record. There is little dispute over the relevant facts. Willie H. Kennedy was initiated into Local Union 995 of the International Brotherhood of Electrical Workers, AFL–CIO on 3 February 1959. Between August 1956 and February 1959 Kennedy worked as an apprentice electrician. Since his initiation, Kennedy has been continuously employed as an electrician with union protection and is building benefits payable by the Plan. Kennedy, although not now retired, is planning for the time when he will no longer be gainfully employed. The planning portion of his preparation for retirement necessitates a prediction of benefits to be received from the Plan. Kennedy's employment longevity measures his Plan benefits—the more years of covered employment, the greater are the benefits.

Kennedy became a vested participant in the union pension and retirement program when the Plan became effective on 1 October 1970. The Plan specifically provides that participants will be given credit for the years employed under the union umbrella before the Plan was created. This a priori coverage is usually referred to as past service credit but the credit is limited to 20 years. The specific language of the Plan

---

1. District Judge of the Western District of Louisiana, sitting by designation.

2. *Kennedy v. Electricians Pension Plan,* 755 F.Supp. 700 (M.D.La.1991).

defining eligibility for past service credit is critical.

Section 4.01(b) *Service Before October 1, 1970—Past Service Credits*

An Employee will be credited with one Past Service Credit for each continuous and successive Plan Year, not to exceed twenty, before October 1, 1970, in which *he was dependent for livelihood upon his trade as an Electrician within the jurisdiction of the Union....*

A presumption is established that an Employee was engaged in Covered Employment throughout the period of his continuous membership in the Collective Bargaining Unit represented by the Union between October 1, 1950 and October 1, 1970. *All Employees who were active members of the Collective Bargaining Unit represented by the Union on October 1, 1970, shall be given Past Service Credit for each full year of continuous and unbroken membership in the Collective Bargaining Unit....* The *membership records of the Local Union or the International Union with which the Local is affiliated may be used a sufficient proof of membership and its continuity* (based upon such records or other evidences of membership or coverage).

*For any period not covered by the preceding sentence*, an Employee may be entitled to receive a year of Past Service Credit for each year between October 1, 1950 and October 1, 1970 in which he was dependent upon such Employment, as evidenced by Social Security records, payroll records, tax records, or any other evidence of such Employment deemed acceptable by the Board of Trustees.... (emphasis added)

The quoted language was adopted in 1976 and served to amend the Plan. The language of the section before the Plan was amended in 1976 is also of interest from a comparative analysis standpoint.

Section 1. *PAST SERVICE PENSION CREDITS—FOR PERIODS PRIOR TO OCTOBER 1, 1970.* It is recognized that it would be difficult for some Employees to prove where they worked in Covered Employment for the Years Prior to the time the Pension Plan started, and therefore a conclusive presumption is established that an Employee was engaged in Covered Employment throughout the period of his continuous membership in the Union between October 1, 1950 and October 1, 1970. *All Employees who were members in good standing of the Union on October 1, 1970*[3], *shall be given credit for Past Service for all years of continuous and unbroken membership in the Union dating back from that date.* (emphasis added)

As we have stated, Kennedy was an apprentice electrician between August 1956 and February 1959. According to Kennedy, the 1976 amendment broadened the scope of persons covered for past service credit to include not only union initiates, but also union apprentices.

In an effort to clarify his coverage history, Kennedy, in March of 1988, requested that the Trustees give him past service credit for the three years he worked as an apprentice. By letter dated 4 April 1988, the Trustees informed Kennedy that his request had been denied "because having status as an apprentice is not ... 'reasonable evidence of an Employee's dependence upon such Employment,' and because status as an apprentice is not sufficient proof of continuous and successive employment." Kennedy appealed this denial by providing the Trustees with documents demonstrating that his performance as an apprentice electrician was continuous from 15 August 1956 through 3 February 1959; that he was dependent for his livelihood on his apprentice work; and, that he worked solely for employers who had signed collective bargaining agreements with Local 995. By letter of 3 October 1988, the Trustees notified Kennedy that, his request was denied for yet another reason. The Trustees

---

**3.** The Plan is administered by an administrator appointed by the trustees and funded by contributions made by employers who have signed collective bargaining agreements with the Local. The Plan is a defined benefits pension plan and is subject to the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1001, et seq.

based their second refusal on the fact that Kennedy was not a member of the Local during his apprenticeship.

Kennedy's declaratory judgment suit was filed pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA, which allows a participant to "clarify his rights to future benefits." The district court concluded that the Trustees abused their discretion in deciding that Kennedy was not eligible for past service credit during his apprenticeship. The court also held that Kennedy was not barred from bringing this suit by a statute of limitations or the equitable doctrine of laches.

## II. Statute of Limitations

■ The Trustees assert that Kennedy is time barred from bringing his action by 29 U.S.C. § 1113. That statute sets forth a three year prescriptive period for actions "with respect to a fiduciary's breach of any responsibility, duty or obligation. . . ." *Id.* The parties have stipulated that since 1980 Kennedy has received quarterly notices from the Plan Trustees regarding his Plan benefits. These notices specifically state that Kennedy has only "11.00" prior service credits. Appellants argue that, because Kennedy has been placed on notice since 1980 that the Plan has credited him for only 11 years of prior service, his suit was not filed within three years of the time he "had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2).

The district court held that the time bar in § 1113 was inapplicable. That legal decision is subject to a de novo standard of review by this court. This suit is not an action "with respect to a fiduciary's breach of any responsibility, duty or obligation" under § 1113. Rather, as we have stated, Kennedy is seeking to "to clarify his rights to future benefits" as specifically authorized by § 1132(a)(1)(B). Congress limited the application of § 1113 "to suits claiming breach of an ERISA trustee's fiduciary duty 'under this part,' which does not include beneficiary suits under § 1132(a)(1)(B)." *Johnson v. State Mut. Life Assur. Co. of America,* 942 F.2d 1260, 1262 (8th Cir.1991). Thus, Kennedy's action to clarify his future rights under the Plan is not subject to the three year statute of limitations applicable to actions for breach of fiduciary duty.

■ Because ERISA does not provide a statute of limitations for actions brought to clarify rights to future benefits under § 1132(a)(1)(B), we look to state law for the applicable time limit. *See McClure v. Zoecon, Inc.,* 936 F.2d 777, 778 (5th Cir.1991); *see also DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (when a federal cause of action fails to supply an express statute of limitations "Congress intended that the courts apply the most closely analogous statute of limitations under state law." *Id.* at 158, 103 S.Ct. at 2287).[4] Personal actions are subject to a ten year prescriptive period. La. Civ.Code Ann. art. 3499. An action to clarify pension benefits is a personal action.[5] Kennedy brought this suit on 14 August 1989, less than ten years after he received his first notice from the Plan. Assuming that the statute began to run when Kennedy received his first notice, his suit brought

---

**4.** The Supreme Court has stated that, in the absence of a federal time bar, federal courts "should decline to borrow a state statute of limitations only 'when a rule from elsewhere in federal law clearly provides a closer analogy than available in state statutes, and when the federal policies at stake and the practicalities of litigation make that rule significantly more appropriate.'" *Reed v. United Transportation Union,* 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989) (*quoting DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294.). In our view, neither § 1113 nor any other federal limitations provides an exception to the general rule.

**5.** *See Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.,* 609 F.Supp. 1302 (E.D.La. 1984) (suit to recover pension benefits is not an action for wages; it is a personal action, subject to the ten year prescriptive period); *Greer v. Continental Cas. Co.,* 347 So.2d 70 (La.Ct.App. 1977) (ten year limitation applicable to suit by employer in which employee alleged employer breached obligations to notify of benefits in retirement policy); *State ex rel. Murray v. Board of Trustees of Police Pension Fund for City of New Orleans,* 259 So.2d 613 (La.Ct.App.1972) (retired policemen's suit to increase in pension benefits was personal action subject to ten year limitation).

within ten years from the date of receipt is timely.

### III. Laches

▪ We also affirm the finding of the district court that Kennedy's suit is not barred by the equitable doctrine of laches. The district court's decision will only be reversed for abuse of discretion. *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir.1985), *reh'g denied* 782 F.2d 1351 (1986). Considering the facts of this case, we do not find that the Appellants were prejudiced by any delay in the commencement of this action. *See Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 215, 83 S.Ct. 1185, 1191, 10 L.Ed.2d 297 (1963) ("test of laches is prejudice to other party"); *Gardner v. Panama R.R. Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951) ("where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief").

### IV. The Trustees' Interpretation

▪ We now turn to the decision of the Trustees. Before examining the Trustees decision that denied Kennedy past service credit for his stint as an apprentice, we must determine the applicable standard of review. The Supreme Court has held that courts should review a denial of benefits challenged under § 1132(a)(1)(B) under a *de novo* standard "unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the benefit Plan gives administrators such authority, then the abuse of discretion standard will be our measuring stick. *See Vasseur v. Halliburton Co.*, 950 F.2d 1002, 1006 (5th Cir.1992); *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1556 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 453, 116

L.Ed.2d 470 (1991); *Penn v. Howe–Baker Engineers, Inc.*, 898 F.2d 1096, 1099 (5th Cir.1990).

Under the terms of the Plan, the Trustees are vested with the authority to interpret and construe the past service credit provisions: "The decision of the Trustees as to the amount of Past Service Credits granted to an Employee shall be final and binding." [Article 3, Section 3.12(a)]. Further, the Plan provides that "[t]he Trustees shall be the sole judges of the standard of proof required in any case and of the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties." (Section 6.03). Accordingly, we review the Trustees' interpretation of the provisions governing past service credit for an abuse of discretion.

When reviewing the Trustee's decision, *Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension & Retirement Fund*, 877 F.2d 441 (5th Cir.1989),[6] directs the district court to determine the legally correct interpretation of the Plan's provisions. *Id.* at 444 (*citing Denton v. First National Bank of Waco*, 765 F.2d 1295, 1304 (5th Cir.1985)). Then, the court must determine if there has been an abuse of discretion in light of the interpretation given the Plan by the Trustees.

### A. *The Correct Interpretation*

▪ In determining the legally correct interpretation of the Plan, we consider three issues: (1) whether the Trustees have given the Plan a uniform construction; (2) whether the Trustees' reading of the Plan is fair and reasonable; and (3) whether the interpretation results in substantial unanticipated costs. *Batchelor*, 877 F.2d at 444 (*citing Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982); *see also Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53 (5th Cir.1990), *cert. denied*, ——

---

**6.** The underlying facts in *Batchelor* are remarkably similar to the facts here. Batchelor, an electrician, was denied past service credit for maintenance work he had performed from 1946 through 1959 for a company that did not contribute to the Pension Fund. Batchelor argued that the language of the Pension Fund allowed him past service credit regardless of whether his employer was a signatory to the fund. The district court agreed with Batchelor, and we affirmed.

U.S. ——, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990)).

### 1. Uniform Construction

■ Because Appellants inform us of only two other requests for past service credit that even resemble the request from Kennedy, we have few weights for our construction scale. Appellants refer to a meeting held in July 1987 at which the Trustees allegedly voted to deny two applicants past service credits for apprenticeship service. There is not, however, any evidence presented indicating the rationale for these denials. In contrast to the letters of denial written to Kennedy, the district court was provided no explanation for the Trustees decision to exclude the prior service credit requests of the two applicants. Absent such information, we cannot say that the Trustees have given the Plan a uniform construction. The mere fact that the Trustees have denied three union members past service credits for their apprenticeship service, without evidence of the basis for such denials, does not sufficiently show "uniform construction."

The facts of this case leave us doubting that the Trustees *have* given the Plan a uniform construction. In their two denial letters to Kennedy, the Trustees established two different explanations for their decision. The 4 April 1988 letter informed Kennedy that his request had been denied "because having status as an apprentice is not, ... 'reasonable evidence of an Employee's dependence upon such Employment,' and because status as an apprentice is not sufficient proof of continuous and successive employment.'" Then, after Kennedy provided documentation evidencing that his work as an apprentice electrician was continuous, that he was dependant for his livelihood on his apprenticeship, and that he worked solely for employers who were members of the collective bargaining unit, the Trustees informed Kennedy in a 3 Octo-

ber 1988 letter that he was denied because he was not a member of Local 995 during his apprentices work.[7] These inconsistent rationale further persuade us that the Trustees have not given the Plan a uniform construction.

### 2. Fair and Reasonable Reading

■ The district court found it "quite apparent" that the Trustees' interpretation is in direct conflict with the language of the Plan. *Kennedy,* 755 F.Supp. at 706. We agree that a fair reading of the controlling language would entitle Kennedy to receive credit for his years as an apprentice. The relevant language from the Plan, as amended in 1976, has been quoted previously in this opinion. A reading of this language does not support Appellants' position that the Plan requires initiation into the Union for entitlement to past service credits. The language plainly states that employees who were active members of the "Collective Bargaining Unit" in October 1970 will receive past service credit for every year of continuous and unbroken service in the collective bargaining unit. As we read the Plan, Kennedy's continuous membership in the collective bargaining unit between October 1950 and October 1970, entitled him to Plan coverage.

There is simply no language in the Plan to support the Trustees' interpretation. Initiation into the Union is not specified as a prerequisite for such credit. Moreover, the language that requires submission of proof of other items (i.e., dependency and successive employment) further demonstrates that the past service credits are not hinged to initiation in the union.[8] It is undisputed that apprentices were members of the collective bargaining unit, and the facts show that Kennedy's membership in the collective bargaining unit (through his employment with participating employers) was continuous and unbroken. For these reasons, we conclude that a fair reading of

---

7. The Trustees maintain that this latter position has been their consistently held view. (Deposition of John Roshto pp. 17–18).

8. Appellants argue that this language was intended solely to benefit "Plan participants who

were never initiated into the Union." (Appellant's brief at 37). Appellants provide no support for this proposition, however, and such a limitation cannot be gleaned from the applicable language.

Section 4.01(b) would entitle Kennedy to past service credits. At least in Kennedy's case, the Trustees reading of the Plan was unfair and unreasonable.

### 3. Substantial Unanticipated Costs

An additional factor to consider is whether either party's interpretation of the Plan "would give rise to 'substantial unanticipated costs to the Plan.'" *Batchelor*, 877 F.2d at 445 (*citing Lowry v. Bankers Life and Casualty Retirement Plan*, 865 F.2d 692, *reh'g denied* 871 F.2d 522, 524 (5th Cir.1989)). An interpretation that would result in substantial unanticipated costs may be less likely to be legally correct. *Id.*

Appellants argue that if Kennedy is allowed to claim past service credits for his time as an apprentice, as many as 440 current participants might claim similar benefits. Appellants claim that this would cripple the Plan. The Fund's actuary testified that apprentice eligibility could cost the Plan between $849,500 and $3,186,900, amounting to a 2.3% increase in actuarial liability for one additional year of past service credit (granted to all 440 participants) to an 8.7% increase for four years of additional past service credit. The result of such an increase, claims the actuary, would be "possibly causing a postponement of benefits for a few years." (Deposition of L. Black, p. 20).

Kennedy argues that the actuary's estimates represent an unrealistic worst case scenario. He claims that the actuary had no way of determining whether all 440 participants would be entitled to additional past service credit. Even if a credit would be applicable, not all participants served the same time as an apprentice. Thus, a prediction predicated upon an unknown term (the years of apprenticeship) and an unknown quantity in the set (the number of people serving an apprenticeship before Union initiation), results in a calculation steeped in speculation. Kennedy, on the other hand, presents a graph showing that some of the 440 employees were apprentices for only a matter of months. Finally, Kennedy points out that benefit increases have been postponed in the past—suggesting that even the worst case scenario would not undermine the Plan.

Although neither party provides us with definitive guidance on the likely financial impact of implementing Kennedy's interpretation of the Plan,[9] it is clear that the granting of apprenticeship credit could have a substantial impact on the Plan.[10] In this regard, we must contrast the possible costs with the Plan's total assets. *Batchelor*, 877 F.2d at 445. At the end of 1989, the Fund was worth roughly $36.5 million dollars. Assuming that adoption of Kennedy's interpretation will cost the Plan the mean of the actuary's predictions, or roughly $2 million dollars,[11] such an impact on the fund would be substantial.[12]

Yet, we are unconvinced that Kennedy's interpretation yields "unanticipated cost." The district court held that the 1976 amendment to the Plan was specifically intended to "extend prior service credit to apprentices." *Kennedy*, 755 F.Supp. at 707. Al-

---

**9.** Neither party has estimated exactly how many participants would likely file for apprenticeship credit and for how many years. We are surprised that such information was not at the disposal of Appellants.

**10.** We were presented with a similar problem in *Batchelor*. The Appellants' actuary stated that "'I have the feeling that once the true figure, once we shovel it out, only four [other employees] could receive it [referring to the credit Batchelor seeks]. It would be in the range of $100 to $150 thousand dollars.'" 877 F.2d at 445. Noting that this was the most precise evidence in the record, we concluded that "the

unanticipated costs would be in the range of $124,000 to $174,000." *Id.*

**11.** Because they are based on all 440 participants claiming four years of apprenticeship credit, there is no basis for using the actuary's highest figures. As Kennedy has shown, the terms of apprenticeship service varies widely among members (some members spent less than a year as apprentices).

**12.** In *Batchelor* we found that the maximum unanticipated cost would be roughly 1.89% of the Fund's total assets. Here, the cost to the Fund (based on the $2 million figure) would amount to almost 5.5% of the total assets.

though we have not been provided conclusive evidence as to why the qualifications for past service credit were purposely liberalized in 1976, our reading of Section 4.01(b) compels us to agree with the district court. By requiring *membership in the Union* for eligibility, the original past service credit provision echoes the Trustees current interpretation of the Plan. As previously discussed, this language was amended in 1976 to require only that all employees be *"dependant for livelihood on his trade as an Electrician within the jurisdiction of the Union"* (emphasis added). The membership requirement was obviously omitted. Appellants have not persuaded us that Kennedy's interpretation of the amended language in any way conflicts with the 1976 amendment.

We therefore confirm the district court's holding that the plain meaning of the Plan, as amended in 1976, would permit past service credit for apprenticeship service for members of the collective bargaining unit between October 1950 and October 1970. In denying Kennedy the credit, the Trustees have read the Plan unfairly. Moreover, because the language of the Plan was obviously liberalized to grant credit for years of apprentice service, we agree that the Fund will not face substantial *unanticipated* costs if Kennedy is to prevail.

### B. *Abuse of Discretion*

The remaining factor to consider is whether the Trustees interpretation of the Plan, even though legally incorrect, amounts to an abuse of discretion. It is not mere error committed during administrative process that rises to correction by federal courts. The error must be one of an abuse of discretion. In *Batchelor* we outlined three considerations to guide our inquiry: (1) the internal consistency of the Plan under the interpretation given by the Trustees; (2) any relevant regulations formulated by the appropriate administrative agency; and (3) factual background of the

determination and inferences of lack of good faith. *Batchelor*, 877 F.2d at 444 (*citing Dennard*, 681 F.2d at 314).

#### 1. Internal consistency

As stated by the district court, neither party has presented persuasive evidence that the applicable language (Section 4.01(b)) conflicts with any other provision in the Plan.

#### 2. Relevant Regulations

No relevant regulations have been presented to the court.

#### 3. Factual Background

The district court examined the factual background of this case by noting that the "Trustees adopted their construction because it was a very easy and shorthand method of drawing a bright line between eligibility for past service credits and non-eligibility.... [T]he Trustees personally thought they were protecting the assets of the Plan by not extending prior service credit to apprentices and thus they were not individually in bad faith." *Kennedy*, 755 F.Supp at 707. We agree with the district court that there is no evidence that the Trustees decisions were made in bad faith; and we have already held that the Trustees interpretation was unfair and unreasonable.

To find an absence of abuse of discretion, the court must scour the record and the pleadings for any legal basis upon which the Trustees could have based their interpretations. In the light of the scant evidence presented by both parties, the district court was correct in its assessment of the factual background of the Trustees' determination. Appellants have presented no evidence that the Trustees had more than merely a good faith belief that apprenticeship service was not included under the terms of the Plan.[13] Indeed, the deposition

---

**13.** Appellants do not support their claim that the 1976 amendment "was to make provision for Plan participants who were *never* initiated into the union." (Appellant's Brief at 37). One of the Trustees testified that the information

furnished to the Plan's actuary (in compliance with ERISA funding and contribution requirements) "has never included apprenticeship hours prior to initiation under any case." (Deposition of J. Roshto at pp. 19). We do not,

testimony submitted by appellants reflects confusion on the part of the Trustees as to their own interpretation of the Plan. Referring to the Trustees' rejection of Kennedy's application, Trustee Mr. Roshto stated:

> At that time we were working people from all over the country, other people, permit people, ... and we looked very hard to try to find a line that we could be fair and impartial with everyone and a criteria we could use that we would meet everybody.... We looked at all of it close, and there was still some doubts lingering and doubts for others, and we felt like if we strayed off to the policy that we set for everyone we would get off of what's fair and not fair.

(Deposition of J. Roshto pp. 7–8). Although it would be incorrect to make an inference of bad faith from the limited factual background presented by the parties, Appellants have simply failed to show that the Trustees' interpretation is legally sound.

After an exhaustive examination of the evidence and the briefs submitted by both parties, we find, as did the district court, that the Trustees interpretation of the Plan constituted an abuse of discretion. Under the plain meaning of the language amended to the Plan in 1976, Kennedy was entitled to past service credit for his service as an apprentice. Furthermore, the factual background does not support Appellants' argument that the Trustees properly interpreted the Plan. Consequently, the district court did not err in holding that the Trustees' interpretation of the Plan was an abuse of discretion.

For the forgoing reasons, we AFFIRM.

however, view this as legal support for the    Trustees' interpretation.