# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30918

United States Court of Appeals
Fifth Circuit

**FILED**
July 25, 2019

Lyle W. Cayce
Clerk

MICHAEL FACIANE,

      Plaintiff - Appellant

v.

SUN LIFE ASSURANCE COMPANY OF CANADA,

      Defendant - Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana

Before OWEN, SOUTHWICK, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Michael Faciane, a beneficiary of a long-term disability plan governed by the Employee Retirement Income Security Act of 1974 (ERISA) and administered by Sun Life Assurance Company of Canada, alleged that Sun Life had miscalculated his benefits since 2008. Sun Life argued that the contractual limitations period for Faciane's claim had long since lapsed. The district court granted summary judgment to Sun Life, and we affirm.

I

Michael Faciane was employed by Capital One Financial Corporation and was a member of its long-term disability (LTD) benefits plan when he

No. 18-30918

suffered a work-related injury in June 2006.[1] Sun Life Assurance Company of Canada administers the LTD plan, and in March 2008, it determined that Faciane was eligible for benefits. At this point, Faciane and Sun Life had a dispute: whether Faciane had a "buy up plan" or just the standard plan. If he had the buy-up plan, his benefits would pay out 66.67% of his "basic monthly earnings"; if not, just 50%. A "claim control log" maintained by Sun Life shows various calls with Faciane and inquiries by Sun Life employees in early and mid-2008 to determine which percentage should apply.

In a letter dated March 31, 2008, Sun Life said that Faciane was entitled to a benefit amount of 50% of his basic monthly earnings, explaining that it did not have enough information to determine that he had the buy-up plan.[2] The letter also indicated that Sun Life had calculated Faciane's basic monthly earnings as $5,134.16. Due to various offsets, his monthly net benefit was the plan minimum, $100.

---

[1] Originally Faciane was employed by Hibernia Bank, which Capital One acquired.
[2] The letter included the following relevant text:

Your benefits have been calculated as follows, based on the information we have currently in your file:

| | |
|---|---|
| Basic Monthly Earnings | $ 5134.16 |
| Monthly Gross Benefit at 50% | $ 2567.08 |
| Minus SS Primary Benefit | - $ 1505.00 |
| Minus SS Dependent Benefit | - $ 728.00 |
| Minus Workers Compensation Benefit | - $ 1967.33 |
| Minus Salary Continuation | - $ 2026.00 |
| Minimum Net Monthly Benefit | $ 100.00 |

You maybe [sic] eligible for Long Term Disability Benefits under the buy up plan of 60% and your salary continuation may have stopped, [sic] we have made several attempts to your employer [sic] to obtain this information and were unsuccessful. We had to make a decision on your claim therefore [sic] we made a decision on the information we have on file. In order to determine if you are eligible for the buy up Long Term Disability Plan we need from your employer a copy of your enrollment card.

No. 18-30918

According to the claim control log, a phone conversation between Faciane and a Sun Life employee occurred on May 22, 2008. The employee's entry in the log makes three noteworthy points. First, the log shows they discussed Faciane's basic monthly earnings figure, the subject of this appeal. Second, Faciane was disputing just the percentage used in the calculation of his benefits, not the monthly earnings figure to which the percentage would be applied. Third, Faciane seemed to have received the March 31 letter explaining his benefit calculation but had misplaced it.

The percentage dispute was eventually resolved in April 2011, when Sun Life was finally convinced that Faciane had the buy-up plan. A Sun Life employee conveyed this information to Faciane by phone in mid-April and then by an acknowledgment letter posted the same day. The letter confirmed the change to 66.67% of basic monthly earnings, while reiterating the same monthly earnings figure as the March 2008 letter: $5,134.16. Faciane's monthly net benefit remained $100, due to offsets. The letter also informed Faciane of the internal appeal process and his right to sue under ERISA.

On June 26, 2017, six years later, Faciane administratively appealed, raising two issues. First, he argued that his average monthly earnings in the year preceding his injury, counting salary and bonuses, were $8,118.52, not $5,134.16 as Sun Life had determined. He thus argued that his benefits had been miscalculated since 2008. Counting offsets, Faciane believed he should have received $960 per month since 2008, not $100. Second, Faciane had reached a settlement as to worker's compensation, and he contested its implications for his LTD benefits. In a September 2017 letter, Sun Life resolved the settlement issue favorably to Faciane but stood by its calculation of his basic monthly earnings and net monthly benefit from a decade before.

Faciane filed suit under ERISA in the Eastern District of Louisiana in December 2017. His complaint focused on the basic monthly earnings figure,

No. 18-30918

$5,134. Faciane argued that Sun Life should have used his earnings as of June 2006, immediately prior to his disabling injury, not his earnings as of January 1 preceding the injury. Faciane alleged he had received a pay increase after January 1, 2006 but before his injury in June 2006, so Sun Life's decision to use his earlier earnings allegedly deprived him of benefits. Faciane also argued for inclusion of a certain bonus in the earnings figure.

Sun Life moved to dismiss, citing the LTD plan's three-year contractual limitations provision. Following reassignment to a different district judge,[3] the district court converted Sun Life's filing to a motion for summary judgment and called for supplemental briefing. Faciane's new brief advanced an argument not made in his earlier response to Sun Life's motion. While his response had acknowledged the "initial letter" of March 31, 2008, Faciane now argued that he had not actually received the letter and thus that his ERISA claim did not accrue then. Instead, he contended that the accrual of his claim should be dated to the denial of his administrative appeal in 2017.[4]

The district court began its analysis with the plan's limitations provision, which provides beneficiaries three years to file suit "after the time Proof of Claim is required." Following Supreme Court precedent, the district court considered whether the contractual provision would permit Faciane a "reasonable" time to file suit. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 106–07 (2013). The accrual date of Faciane's miscalculation claim was not necessarily the same date as the commencement of the limitations

---

[3] The case was assigned originally to Judge Engelhardt, but after his confirmation to our court, it was reassigned to Judge Africk.

[4] In the alternative, if the court found that he received the March 2008 letter, Faciane argued that Louisiana's ten-year prescriptive period for contractual claims should supplant the contractual limitations period. Faciane also argued that Sun Life should be estopped from invoking the contractual provision. The district court rejected both arguments. Faciane does not press either one on appeal.

period, because Sun Life had recognized that Faciane was entitled to benefits. The asserted injury came later, when Sun Life allegedly miscalculated those benefits.

The district court observed that no Fifth Circuit case expressly stated an accrual rule for miscalculation claims, so it looked elsewhere: to a Second Circuit decision pegging accrual to the time at which "there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation," *Novella v. Westchester County*, 661 F.3d 128, 147 (2nd Cir. 2011); and to a Third Circuit decision ruling that an award of benefits could trigger accrual of a miscalculation claim if it constituted a "repudiation" of the beneficiary's entitlement to greater benefits "that is clear and made known to the beneficiary," *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (3rd Cir. 2007).

The district court considered the March 31, 2008 letter the accrual event for Faciane's claim. The court applied Fifth Circuit precedent on the presumption that mail is received when it has been properly dispatched, and it concluded there was no fact issue that Faciane had received the letter. The court found that the letter apprised Faciane of the monthly earnings figure Sun Life was using and that this information was adequate for Faciane's miscalculation claim to accrue. The court added that, even if Faciane had not received the letter, his effort to contest the percentage used in the benefit calculation showed he knew and understood the calculation Sun Life had used. The court figured that the contractual limitations period would end in March 2010 because Faciane's proof of claim was required by March 2007. With accrual in March 2008, the workings of the plan's administrative appeals process would still leave Faciane "at least a year, and most likely longer," to sue before the expiration of the limitations period. The court deemed this reasonable, permitting enforcement of the limitations period, so it granted

No. 18-30918

summary judgment to Sun Life, dismissing the suit with prejudice as untimely.[5]

Faciane moved for reconsideration, contending that the district court had misapplied the law governing accrual of miscalculation claims. The motion focused on *Withrow v. Halsey*, 655 F.3d 1032 (9th Cir. 2011), in which the Ninth Circuit ruled that an ERISA miscalculation claim was timely despite a gap of many years between the plan and beneficiary's initial correspondence and the beneficiary's suit. *Id.* at 1038. Faciane faulted the district court for not applying *Withrow*, though he had not previously cited it, and he argued that its application would change the result in his favor. The district court refused to consider *Withrow* because it was neither binding nor new, and it reiterated its application of *Novella* and *Miller*. Faciane's appeal followed.

II

ERISA permits a plan beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Standard summary judgment rules control in ERISA cases." *Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017) (quotation omitted). "Summary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). This court reviews a grant of summary judgment de novo. *Id.*

---

[5] The district court also considered and rejected the "continuing violation" theory of accrual, under which each recurring payment by Sun Life would serve as a new accrual date. Faciane does not urge this theory on appeal. We do not rule on its validity now, but we note that other circuit courts have rejected it in the context of "an alleged one-time miscalculation of ERISA benefits." *See Riley v. Metro. Life Ins. Co.*, 744 F.3d 241, 246–48 (1st Cir. 2014) (collecting cases).

No. 18-30918

III

A

ERISA does not provide a statute of limitations for suits to recover benefits.[6] *Heimeshoff*, 571 U.S. at 105. The limitations period for analogous claims under state law may fill the gap. *See, e.g.*, *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997); *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992). Alternatively, the parties may fill the gap by agreement: "Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable." *Heimeshoff*, 571 U.S. at 105–06. In *Heimeshoff*, the LTD plan at issue had a limitations period prohibiting legal action "3 years after the time written proof of loss is required to be furnished according to the terms of the policy." *Id.* at 103. This period began before the cause of action accrued, but this was permissible because, even after the plan's administrative review process, the beneficiary would have at least a year to file suit. *Id.* at 109. Accordingly, the Supreme Court gave effect to the plan's limitations provision. *Id.*

*Heimeshoff* is a problem for Faciane because the limitations provision upheld in that case is the same as the one in Faciane's plan: three years from the time required to submit proof of claim. To obtain reversal of the district court, Faciane must demonstrate that the plan's limitations provision would leave him an unreasonably short period to file suit from the time his claim accrued. The question therefore is the accrual date of his miscalculation claim.

---

[6] This is in contrast to breach of fiduciary duty claims, for which ERISA does specify a limitations period. *See* 29 U.S.C. § 1113; *Babin v. Quality Energy Servs., Inc.*, 877 F.3d 621, 627 n.8 (5th Cir. 2017).

No. 18-30918

Accrual of ERISA claims is a question of "federal common law." *Riley v. Metro. Life Ins. Co.*, 744 F.3d 241, 244 (1st Cir. 2014); *Union Pac. R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998); *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996). Accrual is a simple matter when a claim for benefits has been formally made and formally denied. *See, e.g.*, *Riley*, 744 F.3d at 244–45; *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005). To cover less-clear situations, circuit courts have applied a form of the standard federal discovery rule: a claim accrues when a party has enough information that it knows or reasonably should know of the injury or deprivation. *See, e.g.*, *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 207 (2nd Cir. 2017) (asking "whether a participant would have had enough information to assure that he knew or reasonably should have known of the existence" of the problem at issue) (quotation omitted); *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 729 (D.C. Cir. 2012) (similar).

ERISA governs a wide array of plans, which communicate with their beneficiaries in various ways about all manner of plan policy issues. Information is conveyed and disputes are discussed with differing degrees of clarity and formality through letters, phone calls, meetings, and other media. Plans' varying clarity and formality complicate the accrual inquiry for miscalculation claims, which often involve beneficiaries that are regularly receiving benefits, just not in the right amount. That makes them less likely to detect something is amiss than plan participants not receiving benefits at all. Circuit courts deal with these complications through elaboration of the standard discovery rule.

Most commonly, courts apply the "clear repudiation" rule, under which the claim accrues when the plan repudiates a beneficiary's claim to additional benefits in a manner that is clear and made known to the beneficiary. *See, e.g.*,

*Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1277 (11th Cir. 2014) ("a clear and continuing repudiation"); *Riley*, 744 F.3d at 245 ("a clear repudiation").[7] In *Novella*, the Second Circuit noted other courts' clear-repudiation rule but chose different wording: "notice of a miscalculation can be imputed to a pensioner— and the statute of limitations will start to run—when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation." 661 F.3d at 147. Though *Novella*'s language might seem less demanding than the "clear repudiation" required by other circuit courts, the Second Circuit said it meant to adopt a standard "consistent" with the clear-repudiation rule. *Id.*

*Miller*, a Third Circuit decision with facts similar to those we confront here, usefully illustrates the clear-repudiation rule. Miller, a casino employee, was making $690 a week as a floor worker and then became a salesman earning $768 per week. 475 F.3d at 518. Shortly after, a surgery rendered Miller permanently disabled. *Id.* In April 1987, he filed a claim for LTD benefits, and the casino reported the lower salary figure erroneously to the

---

[7] Eight circuit courts use this rule. *See Witt*, 772 F.3d at 1277; *Riley*, 744 F.3d at 245; *Kifafi*, 701 F.3d at 729 ("repudiation . . . [that] is clear and made known to the plan beneficiary"); *Withrow*, 655 F.3d at 1036 ("a clear and continuing repudiation"); *Redmon v. Sud-Chemie Inc. Ret. Plan for Union Emps.*, 547 F.3d 531, 538 (6th Cir. 2008) ("clear and unequivocal repudiation"); *Miller*, 475 F.3d at 520–21 ("a repudiation . . . which was clear and made known"); *Union Pac. R. Co.*, 138 F.3d at 330 ("a repudiation . . . which is clear and made known"); *Daill*, 100 F.3d at 66 ("a clear and unequivocal repudiation").

A published decision of the Fourth Circuit said that a formal denial is not required for a claim to accrue; instead, the court employed an "alternative approach" by which "some event other than a denial of a claim should have alerted" the beneficiary. *See Cotter v. Eastern Conf. of Teamsters Ret. Plan*, 898 F.2d 424, 429 (4th Cir. 1990). Several clear-repudiation cases have approvingly cited *Cotter*. *See Miller*, 475 F.3d at 521; *Union Pac. R. Co.*, 138 F.3d at 330–31. Similarly, a published decision of the Tenth Circuit quoted an early articulation of the clear-repudiation rule by the Second Circuit and declined to find accrual because the facts did not make it clear whether a plan had responded to a beneficiary's request. *See Held v. Manuf. Hanover Leasing Corp.*, 912 F.2d 1197, 1205–06 (10th Cir. 1990) (quoting *Miles v. N.Y. State Teamsters Conf. Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2nd Cir. 1983)). No circuit court has expressly rejected the clear-repudiation rule.

plan. *Id.* In 2002, Miller raised the issue in a letter to the plan administrator. *Id.* Unable to find the old pay records, the administrator stood by its calculation, so Miller sued. *Id.* The Third Circuit deemed the suit untimely. *Id.* at 522. The award that Miller began receiving in 1987 was "a repudiation of his right to greater payment under the LTD plan," which "should have been clear to him upon initial receipt of payment in 1987—monthly checks based on a simple calculation of sixty percent of his salary should have alerted him that he was being underpaid." *Id.* No dispute had triggered any correspondence or administrative review at the time regarding the benefit amount, but in the court's view, none was needed. The information was simple enough, and conveyed clearly enough, for Miller's miscalculation claim to accrue as soon as he began receiving the checks.

*Miller* also illustrates the interests served by the clear-repudiation rule, including "repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses." *Union Pac. R. Co.*, 138 F.3d at 330; *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) (listing "the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities").

Of course, ERISA confers important rights and protects benefits on which people truly depend. Accordingly, courts guard against potential unfairness through a "case-by-case reasonableness inquiry," refusing to find clear repudiation when plan communications involve information or formulae too complex or obscure for the layperson to decipher. *See Novella*, 661 F.3d at 147–48. For instance, in *Kifafi*, the D.C. Circuit scrutinized plan documents that discussed a complicated "backloading" issue in a pension plan's benefits formula. 701 F.3d at 722–23. Distinguishing the simple percentage-of-earnings calculation in *Miller*, the court declined to find clear repudiation because, to

discern the backloading problem, beneficiaries "would have needed to apply complex law to complex facts." *Id.* at 729. Likewise, in *Osberg*, the Second Circuit determined that it would have required average plan participants to make "a heroic chain of deductions" based on "opaque guidance" to deduce a problem in their benefit calculations. 862 F.3d at 207–08. Consequently, the court declined to apply its equivalent to the clear-repudiation rule. *Id.* at 209.

Our court has not expressly rejected or adopted the clear-repudiation rule,[8] but we do have a published decision consistent with its approach. *See Kennedy v. Electricians Pension Plan, IBEW No. 995*, 954 F.2d 1116 (5th Cir. 1992). Kennedy, an electrician, had been accumulating credits in a union's pension plan since 1959. *Id.* at 1118. In 1988, he requested credit for three years he had spent as an apprentice, 1956 to 1959. *Id.* at 1119. This request was based on an amendment to the pension plan rules in 1976. *Id.* His request denied, Kennedy filed suit in 1989. *Id.* at 1120. Our court determined that Louisiana's ten-year limitations period for contract actions applied. *Id.* Analyzing accrual, the court noted that Kennedy began receiving quarterly

---

[8] An early decision might seem to require a formal denial of benefits for accrual of an ERISA claim. *See Paris v. Profit Sharing Plan for Emps. of Howard B. Wolf, Inc.*, 637 F.2d 357 (5th Cir. 1981). *Paris* concerned events occurring shortly before and shortly after ERISA's effective date, January 1, 1975, so ERISA's application depended on when the plaintiffs' claims accrued. *Id.* at 359–60. The defendants favored the plan adoption in 1974 as the accrual date, placing the suit outside ERISA; the plaintiffs pinpointed an interpretation of the plan by the plan trustee in 1975, bringing the suit within ERISA's scope. *Id.* at 360–61. Reasoning that the defendants' adoption theory "would require individuals who are unversed in the law to be constantly vigilant," the court held that "for purposes of ERISA a cause of action does not accrue until an application is denied." *Id.* at 361 (quotation omitted). But a dissenting opinion in a later case argued persuasively that *Paris* "did not purport to establish an inflexible rule for all ERISA cases." *Peace v. Amer. Gen. Life Ins. Co.*, 462 F.3d 437, 453 (5th Cir. 2006) (Owen, J., dissenting). Citing clear-repudiation caselaw, Judge Owen noted that "[n]one of this circuit's decisions have had occasion to address squarely a repudiation of rights under a plan before a request for benefits had been made." *Id.* at 455 & n.63. Thus, Judge Owen concluded that "[t]he proposition that ERISA claims accrue when benefits are denied cannot be a one-size-fits-all rule, irrespective of the facts." *Id.* Because the majority opinion in *Peace* had found ERISA inapplicable, *id.* at 442, it had no occasion to address this point. We thus are untroubled in treating Judge Owen's opinion as persuasive authority.

notices from the plan in 1980 showing his number of pension credits: "Assuming that the statute [of limitations] began to run when Kennedy received his first notice, his suit brought within ten years from the date of receipt is timely." *Id.* at 1120–21. The court's reasoning here tracks the reasoning of *Miller* and other cases: information can trigger accrual, even in the absence of a formal application or denial of benefits, when it is clear and made known to the beneficiary.

B

The district court concluded that Faciane's miscalculation claim accrued in March 2008, either through Sun Life's March 31, 2008 letter explaining his monthly benefit calculation or as evidenced by Faciane's contemporaneous understanding of Sun Life's calculation. To conclude that Faciane received the March 31, 2008 letter, the district court applied the "mailbox rule," under which "[p]roof that a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed." *U.S. v. Ekong*, 518 F.3d 285, 286–87 (5th Cir. 2007) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). Circumstantial evidence may be used to prove that the letter was put in the mail, "including customary mailing practices used in the sender's business." *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007) (quotation omitted). A "bare assertion of non-receipt" is insufficient to rebut the presumption. *Id.* at 421.[9]

---

[9] We have applied the mailbox rule to disputes over mail receipt in many contexts. *See, e.g.*, *Gamel v. Grant Prideco, L.P.*, 625 F. App'x 690, 694 (5th Cir. 2015) (EEOC Title VII right-to-sue letter); *Ekong*, 518 F.3d at 286–87 (Government's demand letter prior to seeking writ of garnishment); *Custer*, 503 F.3d at 417–18, 420–21 (notice letter on change to ERISA-governed LTD benefits); *Warfield v. Byron*, 436 F.3d 551, 556 (5th Cir. 2006) (notice of default judgment); *Beck*, 882 F.2d at 996 (warning from manufacturer in product liability case). Similarly, we have a line of mailbox-rule cases in the immigration context. *See, e.g.*, *Navarrete-Lopez v. Barr*, 919 F.3d 951, 954–55 (5th Cir. 2019); *Hernandez v. Lynch*, 825 F.3d

To corroborate its mailing of the March 2008 letter, Sun Life supplied an affidavit from Susan Everhart, an administrative-review official at Sun Life, who attested that standard mailing practices were followed in this instance. The claim control log reflects that Sun Life employee Marie Baker spoke with Faciane on March 31, 2008, making it quite probable she issued a letter in his case that day. The log also includes another note the same day, in which Baker recorded information she intended to put in the letter to Faciane. As further corroboration, the district court pointed to the log's May 22, 2008 entry, which recorded Faciane saying that he could not find the letter and Baker saying she would resend it. The district court observed that this note is consistent with receipt, not non-receipt. The district court also pointed out that Faciane seemed to acknowledge receiving the March 2008 letter in his initial response to Sun Life's motion to dismiss. Faciane denied receipt only later, in supplemental briefing.

Against the presumption of receipt, Faciane musters little opposition. He claims that Sun Life's log contains no indication that the letter was sent, but he does not address Baker's note on March 31 about what she intended to put in the letter or the note describing their conversation that day. At best, Faciane's argument shifts the accrual date to the vicinity of May 22, 2008, when a note from Baker records her intention to resend him the letter.

Faciane also cites *Duron v. Albertson's LLC*, 560 F.3d 288 (5th Cir. 2009), in which our court applied the mailbox rule and concluded that receipt had not been shown. *Id.* at 290–91. As Sun Life correctly explains, *Duron* has dissimilar facts. Albertson's, the ostensible sender in *Duron*, had not provided any sworn statement or any evidence that its standard mailing practices had

---

266, 269–70 (5th Cir. 2016). That caselaw is distinct, however, owing to the scheme of statutes and regulations that governs immigration proceedings.

been followed. *Id.* at 291. Albertson's claimed it had sent the letter to Duron's counsel, but the attorney represented in a court proceeding that he had not received it. *Id.* at 290. Both points distinguish *Duron*.

Accordingly, with substantial evidence buttressing the presumption of receipt and only ineffectual rebuttals from Faciane, we affirm the district court's conclusion that no genuine issue of material fact exists as to Faciane's receipt of the March 2008 letter.

We also affirm the district court's conclusion that the March 2008 letter contained enough information for Faciane's miscalculation claim to accrue. The issue Faciane raises here is a simple one. He believes his monthly earnings were nearly $3,000 higher than the $5,134 figure that Sun Life reported in the letter. The disputed figure was displayed prominently on the first page of the March 2008 letter. Moreover, the alleged discrepancy is so large, and it concerns a matter so fundamental to any working person, that we conclude the letter clearly repudiated Faciane's entitlement to greater benefits. To see the issue, Faciane did not need to decipher complex formulae or piece together inferences from incomplete information, as other circuit courts have observed in declining to find clear repudiation. *See Osberg*, 862 F.3d at 207–08; *Kifafi*, 701 F.3d at 722–23. Much more similar are the percentage-of-earnings calculation at issue in *Miller* and the simple count of pension credits at issue in *Kennedy*. *See Miller*, 475 F.3d at 522; *Kennedy*, 954 F.2d at 1120–21. As in those cases, the information was clear and simple enough that Faciane could and should have spotted the problem right away.[10]

---

[10] Because we decide that Faciane's claim accrued with receipt of the March 2008 letter, we do not consider whether accrual may be inferred from contextual evidence of Faciane's contemporaneous knowledge. Also, Faciane has not argued that his disability impeded his ability to understand communications from Sun Life. Given that, we do not have cause to consider the clear-repudiation rule's application to a beneficiary whose disability or other circumstances might affect her ability to understand communications from the plan.

No. 18-30918

In affirming the district court, we reject Faciane's theory that his claim accrued only with Sun Life's formal denial of his administrative appeal in 2017. He bases this argument on *Baptist Memorial Hospital–Desoto Inc. v. Crain Automotive Inc.*, 392 F. App'x 288 (5th Cir. 2010) ("*BMHD*"), but the case does not support Faciane's argument.

Faciane chiefly relies on *BMHD*'s discussion of ERISA's administrative exhaustion requirement and its regulation of formal denials of benefits. *See* 29 C.F.R. § 2560.503-1(g)(1) (requiring an explanation of reasons, reference to relevant plan provisions, and other information). A hospital was seeking reimbursement from Crain Automotive, which self-funded its employees' health insurance. 392 F. App'x at 290–92. Our court cited Crain's failure to comply with the regulation's requirements in excusing the hospital's failure to exhaust administrative remedies. *Id.* at 292–94. Faciane believes that, because he did not receive a formal denial compliant with ERISA regulations until 2017, his claim did not accrue until then.

But exhaustion and accrual are different inquiries. Accrual may happen before any administrative review has started, much less ended, as *Heimeshoff* and the clear-repudiation caselaw make clear. *See Heimeshoff*, 571 U.S. at 105–06 (explaining that a claim may accrue before administrative proceedings have begun); *Miller*, 475 F.3d at 522 (finding accrual before any administrative proceedings); *Union Pac. R. Co.*, 138 F.3d at 330–31 (same). Consequently, *BMHD* does not help Faciane's accrual argument.[11]

---

[11] Though unmentioned by Faciane, *BMHD* actually addressed the applicable limitations period and accrual of the hospital's claim. Crain's plan required a claimant to file suit within one year of submitting proof of claim. 392 F. App'x at 294–95. Over a dissent, the panel majority ruled that this period was too short and declined to enforce it. *Id.*; *id.* at 300 (Haynes, J., dissenting). Even if we read *BMHD*, an unpublished decision, as setting a floor for reasonable limitations periods, Sun Life's three-year period is plainly above it. As to accrual, the panel majority cited circuit precedent tying accrual to formal denials of claims. *Id.* at 294 (citing *Harris Methodist Fort Worth*, 426 F.3d at 337). Though Crain was resisting

No. 18-30918

Accrual of miscalculation claims is, and should remain, a "case-by-case reasonableness inquiry." *Novella*, 661 F.3d at 147. In this instance, that inquiry leads us to affirm the district court.

C

Faciane's main challenge to the district court's ruling is the issue he raised in his motion for reconsideration: that the court did not apply *Withrow v. Halsey*, 655 F.3d 1032 (9th Cir. 2011). But Faciane makes no arguments with reference to the abuse of discretion standard under which we review rulings on motions for reconsideration. In any event, *Withrow*'s facts simply differ, so its application does not change the result.

As the district court observed, Faciane's motion for reconsideration did not invoke any particular rule of the Federal Rules of Civil Procedure. Because Faciane had filed it within twenty-eight days of final judgment, the court appropriately construed it as a motion to alter or amend the judgment under Rule 59(e). *See Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019). Rule 59(e) motions are for the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). They "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Life Partners Holdings*, 926 F.3d at 128 (quotation omitted). Our court reviews a district court's ruling on a Rule 59(e) motion for abuse of discretion. *Volvo Fin. Servs. v. Williamson*, 910 F.3d 208, 211 (5th Cir. 2018).

---

the hospital's claim, it had not formally denied it. *Id.* at 295. The hospital had diligently pressed the issue throughout the one-year period, but at its expiration, "BMHD had no reason to believe that the administrator had denied the claim, reasonably expecting that it would provide a clear decision to that effect." *Id.* We might read the court's ruling as strictly applying a formal-denial requirement, but it can also be read as reflecting the same concerns that have led courts in clear-repudiation cases to deem claims timely when diligent claimants got only inconclusive or unclear responses from their plans. *See, e.g.*, *Withrow*, 655 F.3d at 1038; *Held*, 912 F.3d at 1205–06.

16

Faciane's brief discusses *Withrow* at length but says nothing about Rule 59(e) or the district court's ruling thereunder. Our court routinely dismisses arguments as abandoned when parties fail to brief them. *See, e.g.*, *Smith v. Green*, 756 F. App'x 447, 448 n.1 (5th Cir. 2019); *Pool v. Trump*, 756 F. App'x 446, 447 (5th Cir. 2019); *Kingham v. Pham*, 753 F. App'x 336, 337 (5th Cir. 2019). The same is suitable here, given Faciane's lack of briefing on the Rule 59(e) standard.

In any event, application of *Withrow* to Faciane's case does not change the result. *Withrow* is part of a line of Ninth Circuit cases applying the same clear-repudiation rule as other circuit courts. *See* 655 F.3d at 1036; *see also Wise v. Verizon Comm'cns, Inc.*, 600 F.3d 1180, 1188 (9th Cir. 2010); *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006). Withrow, a participant in an LTD plan, tried repeatedly to raise a problem with her benefit amount, starting in 1987, but never got a conclusive response from Reliance, the insurer. 655 F.3d at 1034. After an internal appeal in 2003, she sued. *Id.* at 1034–35. The Ninth Circuit deemed her suit timely despite the passage of so many years:

> Although Withrow knew that Reliance had taken the position its calculation was correct, she was never provided with anything from Reliance that would give her reason to know that her acceptance of continued payment of benefits amounted to an *irrevocable or final determination* by Reliance of the amount of her benefits and a denial by it of a claim concerning that calculation.

*Id.* at 1038 (emphasis added).

Faciane makes much of *Withrow*'s "final or irrevocable determination" language. He points to passages in Sun Life's March 2008 letter suggesting that Sun Life had not finally determined the calculation of his benefits. For example, one sentence indicated that the calculation was "based on the information we have currently in your file." Faciane stresses the uncertainty

these passages convey, but it is clear from context that the uncertainty concerned Faciane's purchase of a buy-up plan rather than a standard plan. Nothing in the letter suggests uncertainty about his basic monthly earnings.

*Withrow* also differs from Faciane's case in that Withrow had diligently pursued the miscalculation issue. 655 F.3d at 1036–38. The lack of finality owed not to her failure to raise the issue, but to the plan's failure to provide a clear answer to her repeated inquiries. As such, the clarity required by the clear-repudiation rule was absent. Faciane, by contrast, never called his basic monthly earnings figure into question until 2017. Sun Life presented that figure to him in 2008, and he waited almost a decade before challenging it.

In sum, *Withrow* does not help Faciane, and the district court did not abuse its discretion by denying Faciane's motion.

## IV

For the foregoing reasons, we AFFIRM.