# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 16, 2025

Lyle W. Cayce
Clerk

———————————

No. 24-20234

———————————

Federal Trade Commission,

*Plaintiff—Appellee*,

*versus*

Zaappaaz, L.L.C., *agent of* WBpromotion.com, *agent of* WB Promotions, Inc., *doing business as* Wrist-Band.com, *doing business as* Customlanyard.net; Azim Makanojiya,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-2717

———————————————————————

Before Dennis, Haynes, and Engelhardt, *Circuit Judges*.

Haynes, *Circuit Judge*:

The Federal Trade Commission ("FTC") alleges that Defendants (collectively, "Zaappaaz") engaged in unfair and deceptive trade practices. After a bench trial, the district court found them liable for $37,549,472.14 in damages. We AFFIRM in part, VACATE in part, and REMAND for further proceedings consistent with this opinion.

Case: 24-20234    Document: 75-1    Page: 2    Date Filed: 06/16/2025

No. 24-20234

## I.    Background

Zaappaaz is an online retailer.  Azim Makanojiya is its founder, president, and director.  During the COVID-19 pandemic, Zaappaaz began selling personal protective equipment ("PPE").  It shipped PPE from a supplier in China to Texas and from there to its customers.

Zaappaaz advertised the PPE on its websites, making claims like: "GUARANTEED TO SHIP TODAY," "IN STOCK – SHIPS SAME DAY," and "ALL PRODUCTS IN STOCK READY TO SHIP."  Zaappaaz also emailed customers that its PPE products were "FULLY IN STOCK, READY TO SHIP SAME DAY AND DELIVER IN 24 HOURS."  Zaappaaz provided customers the option to pay an additional fee to receive their order by a particular delivery date.

Despite its guarantees, Zaappaaz was largely unable to ship PPE equipment the same day an order was placed, and customers did not receive the products they ordered by the promised delivery date, even if they paid for rush shipping.  Numerous customers complained.  To the extent Zaappaaz responded to those complaints, it consistently told customers that their orders would ship soon and that refunds were unavailable for PPE products.

The FTC sued Zaappaaz for these alleged misrepresentations under §§ 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b; and the Mail, Internet, or Telephone Order Merchandise Rule, 16 C.F.R. Part 435.  At the close of discovery, the FTC moved for summary judgment on all of its claims.  The FTC requested $37,549,472.14 in damages, representing "the total of all revenue Defendants received from late or unshipped PPE orders from March to December 2020, minus any refunds or chargebacks issued for those orders."  The magistrate judge recommended partially granting summary judgment as to Zaappaaz's liability but determined that fact issues remained as to damages and injunctive relief.  The magistrate judge noted

that "the FTC has presented no basis for the Court to conclude that a full refund to every customer who received a late shipment is *necessary* to redress the injury." The magistrate judge explained that, while "some customers may have had no need for PPE that arrived later than Zaappaaz promised," there was no evidence to conclude that "this was the case for *every* customer who received a late shipment." The district court adopted the magistrate judge's report and recommendation over objections from both parties.

The FTC subsequently moved under Federal Rule of Civil Procedure 56(g) to deem certain facts established and narrow the issues for trial. The district court granted the motion. In doing so, it deemed the following established: (1) Zaappaaz's net revenue from late and/or undelivered shipments of PPE was $37,549,472.14, and (2) as a subset of that $37,549,472.14, Zaappaaz's net revenue from undelivered and unrefunded PPE was $12,241,035.69.

Three days before the bench trial, the district court issued a pre-trial order clarifying what issues were resolved and what needed to be determined at trial. The district court ruled that (1) the FTC was entitled to a presumption that Zaappaaz's customers actually relied on its widely disseminated misrepresentations; (2) Zaappaaz had not rebutted this presumption with argument or evidence; and (3) the FTC had established consumer injury as a result. Additionally, the district court concluded that the FTC had shown that $12,241,035.69—representing Zaappaaz's net revenue from undelivered and unrefunded PPE—was necessary to redress consumer injuries. The only remaining issues for trial were whether to grant injunctive relief and "[w]hether the FTC [could] show by a preponderance of evidence if some amount of monetary relief—less than full refunds—[was] necessary to redress the injury of consumers who received late delivered orders."

No. 24-20234

Following the bench trial, the district court awarded the FTC a total of $37,549,472.14 in damages against Zaappaaz.[1] The district court explained that $12,241,035.69 was necessary to fully compensate "consumers who paid for PPE but received nothing" and that $25,308,436.45 was necessary to fully compensate "consumers who received late-shipped goods." The district court acknowledged that some consumers who received late orders may have been satisfied with their orders, so it implemented a redress plan for the $25,308,436.45 portion of the award. Under the redress plan, the FTC would hold that portion of the award in an escrow account, and consumers could seek refunds directly from the FTC. After 120 days, any unclaimed funds would be returned to Zaappaaz, minus the costs of administering the escrow account. Zaappaaz timely appealed.

## II.    Jurisdiction

The district court exercised jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction over its final order under 28 U.S.C. § 1291.

## III.    Discussion

Zaappaaz challenges the district court's award of $37,549,472.14. That total is comprised of two distinct segments: $12,241,035.69 for consumers who paid for orders that they never received, and $25,308,436.45 for consumers who received their orders late.

### A. Reliance

Before turning to the two distinct monetary awards, we resolve a threshold question about reliance. Zaappaaz contends that the district court

---

[1] The district court also issued a permanent injunction against Zaappaaz. On appeal, Zaappaaz does not challenge the permanent injunction, so we need not address that aspect of the judgment.

erred by applying a rebuttable presumption of consumer reliance to support consumer injury under 15 U.S.C. § 57b(b).

As the FTC points out, each of our sister circuits that has addressed this question, or a similar one, applies the same rebuttable presumption that the district court applied here. *See FTC v. Am. Screening, LLC*, 105 F.4th 1098, 1102–05 (8th Cir. 2024) (applying rebuttable presumption to action under 15 U.S.C. § 57b(b)); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605–06 (9th Cir. 1993) (per curiam) (same); *see also FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014) (applying it to a similar FTC enforcement action); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 631 n.12 (6th Cir. 2014) (same); *FTC v. Trudeau*, 579 F.3d 754, 773 n.15 (7th Cir. 2009) (same); *FTC v. Kuykendall*, 371 F.3d 745, 765–66 (10th Cir. 2004) (en banc) (same); *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000) (same).[2]    The presumption attaches if the FTC shows "that the

---

[2] The dissenting opinion takes issue with our sister circuits' caselaw recognizing a rebuttable presumption of consumer reliance.  That concern rests in large part on the assertion that their reasoning drew from *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991)—a decision it suggests has been undermined by the Supreme Court's holding in *AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021).  But we disagree.  The Court in *AMG Capital* held that the FTC cannot obtain monetary damages under 15 U.S.C. § 53 because that provision is limited to injunctive relief.  593 U.S. at 77–78.  Notably, the Court said nothing about the availability of a presumption of reliance under 15 U.S.C. § 57b(b), nor did the Ninth Circuit decision it reversed.  That silence is telling.  Indeed, the Eighth Circuit's holding in *American Screening* recognized as much.  There, the court expressly acknowledged that *AMG Capital* abrogated part of *Rare Coin*, but it was careful to say that the presumption of consumer reliance—a distinct concept from the scope of the FTC's remedial authority—remains intact.  *See Am. Screening, LLC*, 105 F.4th at 1103 (explaining that *AMG Capital* "render[ed] part of our opinion in *Rare Coin* no longer good law," but affirming reliance on the portion that *AMG Capital* "did not call into question").  In short, *AMG Capital* clarified what relief is available under § 53(b) but did not speak to what the FTC must prove under § 57b(b).  Accordingly, it did not disturb the settled rule of our sister circuits that, when widespread misrepresentations are at issue, the FTC may invoke a presumption of consumer reliance.

misrepresentations or omissions were of a kind that reasonable and prudent purchasers rely on, that they were widely disseminated, and that injured consumers actually purchased the defendant's products." *Am. Screening, LLC*, 105 F.4th at 1102–03. The defendant may then rebut the presumption by proving the absence of reliance. *See Figgie Int'l*, 994 F.2d at 606.

We are persuaded by the reasoning of our sister circuits and adopt that rebuttable presumption here. We also agree with the district court that the FTC has met the presumption's requirements and that Zaappaaz has not presented evidence to rebut the presumption. We turn next to the question of damages.

## B. $12.2 million award

Zaappaaz argues that the district court erred by granting the FTC's Rule 56(g) motion and establishing before trial that Zaappaaz's net revenue from undelivered and unrefunded PPE orders was $12,241,035.69.[3]

First, the parties disagree about the applicable standard of review for this issue. Zaappaaz contends that, like summary judgment orders, orders under Rule 56(g) are reviewed de novo. The FTC posits that because Rule 56(g) speaks about what a court "may" do, we must review Rule 56(g) orders for abuse of discretion.

Rule 56(g) states that "[i]f the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." The advisory committee's notes to Rule 56(g) explain that "the court may

---

[3] Zaappaaz does not dispute that customers who never received their orders are entitled to full refunds.

decide whether to *apply the summary-judgment standard* to dispose of a material fact that is not genuinely in dispute." FED. R. CIV. P. 56(g) advisory committee's note to 2010 amendment (emphasis added). The question before us here is whether the $12,241,035.69 figure had been adequately established for trial by undisputed summary judgment evidence, so we apply the summary judgment standard of review.

We review summary judgment de novo. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003) (per curiam). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Before a bench trial, the district court has "somewhat greater discretion to consider what weight it will accord the evidence when considering summary judgment." *Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278, 293 (5th Cir. 2023) (internal quotation marks and citation omitted). It may conclude "that there are no genuine issues of material fact, even though [that] decision may depend on inferences to be drawn from what has been incontrovertibly proved." *Id.* (quotation omitted). Accordingly, when the district court sits as the trier of fact it has "enhanced leeway" in its summary judgment rulings. *Id.* at 294.

Now to the merits. Zaappaaz contends that the district court erred because of an alleged conflict between the magistrate judge's report and recommendation on summary judgment, which the district court adopted, and the district court's subsequent Rule 56(g) order. The magistrate judge recommended denying summary judgment as to the $37,549,472.12 damages calculation and added that the FTC made no showing as to any lesser amount. Then, the FTC moved under Rule 56(g) to establish for trial that the amount of undelivered and unrefunded PPE orders was $12,241,035.69, citing declarations from Rufus Jenkins (an FTC forensic accountant) and Elizabeth Miles (an FTC data analyst), which it had also relied on in its

summary judgment motion. The district court granted the motion. In a subsequent pretrial order, the district court acknowledged the alleged conflict with the magistrate judge's report and recommendation but clarified that it granted the Rule 56(g) motion because the FTC had established, based on undisputed facts, that Zaappaaz's revenue from undelivered and unrefunded PPE orders was $12,241,035.69.

This alleged disparity does not in itself require reversal. District courts have broad discretion to revisit non-final, non-appealable partial summary judgment orders, such as the one here. *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns., Inc.*, 761 F.3d 409, 428–29 (5th Cir. 2014).[4]

Nor did the district court otherwise err in granting the Rule 56(g) motion. At summary judgment, the FTC's statement of uncontested material facts stated that Zaappaaz's net revenue from undelivered and unrefunded orders was $12,241,035.69. Other than seeking to exclude the Jenkins and Miles declarations on which that number was based, Zaappaaz did not present any summary judgment evidence to the contrary. In its Rule 56(g) briefing, however, Zaappaaz submitted an affidavit from Makanojiya, in which he asserted that some orders not known to have been delivered were indeed delivered.[5] Attached to the affidavit was a spreadsheet

---

[4] The dissenting opinion asserts that the district court's first order must take precedence over its second order under the so-called "law of non-contradiction." The only cases it cites for support involve the law-of-the-case doctrine and our rule of orderliness, which are not relevant here. The rule that actually applies in this situation is that district courts have broad discretion to revisit non-final, non-appealable partial summary judgment orders. *U.S. Bank Nat'l Ass'n*, 761 F.3d at 428–29.

[5] Zaappaaz's summary judgement response included the same arguments against the $12,241,035.69 figure that it later sought to support with the Makanojiya affidavit at the Rule 56(g) stage. Its lack of evidence for its position at the summary judgment stage cannot be rationalized by the FTC's alleged disclaimer of reliance on the $12,241,035.69 figure because the alleged disclaimer occurred in the FTC's summary judgment *reply* brief. Also,

purporting to show 307 order numbers in one column and corresponding tracking numbers for those orders in the next column. But Makanojiya concedes in his affidavit that Zaappaaz is unable to use those tracking numbers to access any relevant information about whether an order was delivered.[6] We therefore decline to disturb the district court's Rule 56(g) order on the basis of that affidavit. As stated above, prior to a bench trial a district court is entitled to "enhanced leeway" and "somewhat greater discretion to consider what weight it will accord the evidence." *Fleming*, 83 F.4th at 293–94.

For these reasons, we affirm the $12,241,035.69 portion of the judgment.

## C. $25.3 million award

Next, Zaappaaz argues that the district court erred by awarding, after the bench trial, full refunds to customers who received their orders late. According to Zaappaaz, awarding full refunds for all customers who received their orders late is irreconcilable with the relevant statute's direction that courts should grant the relief "*necessary* to *redress* injury." 15 U.S.C. § 57b(b)

---

Zaappaaz conceded that it was on notice about the $12,241,035.69 figure at summary judgment.

[6] The dissenting opinion would presume that the orders at issue were delivered. Below, the district court applied 16 C.F.R. § 435.2(a)(4), which states that a seller's failure to have records or other proof "establishing its use of systems and procedures which assure the shipment of merchandise . . . within any applicable time set forth in this part will create a rebuttable presumption that the seller lacked a reasonable basis for any expectation of shipment within said applicable time." It did so after finding that Zaappaaz did not keep complete records because it lacked tracking numbers for 6.2% of its PPE orders during the relevant timeframe, did not have shipment or delivery information for 4.6% of its PPE orders, and did not produce any documentary evidence supporting the existence of systems and procedures in response to the FTC's discovery requests. We decline to reward Zaappaaz's inadequate record-keeping with a presumption of delivery.

(emphasis added). Zaappaaz also points out that § 57b(b) does not authorize "the imposition of any exemplary or punitive damages." *Id.*

On appeal from a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo. *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 95 F.4th 964, 970–71 (5th Cir. 2024). We also review issues of statutory interpretation de novo. *Watkins v. Allstate Prop. & Cas. Ins.*, 90 F.4th 814, 817 (5th Cir. 2024).

The district court reasoned that full refunds were necessary in this context because "[t]he injury inflicted when consumers rely on a material, pre-purchase misrepresentation is the consumer's loss of the chance to avoid the purchase entirely." It relied primarily on *FTC v. Figgie International, Inc.*, 994 F.2d 595 (9th Cir. 1993) (per curiam).

In *Figgie*, the Ninth Circuit held that full refunds were necessary to redress consumer injury where a seller misled consumers about the efficacy of its product. *Id.* at 606. The seller represented that its *heat* detectors were just as effective as *smoke* detectors, despite knowing this to be false. *Id.* at 598–99. The Ninth Circuit held that the seller's misrepresentation tainted the entire transaction. *Id.* at 606. It analogized the situation to a dishonest merchant selling rhinestones as diamonds and explained that "[c]ustomers who purchased rhinestones sold as diamonds should have the opportunity to get all of their money back." *Id.*

But there are at least two significant differences between *Figgie* and this case. First, the misrepresentations in this case concerned the timing of delivery, not the nature of the product itself.[7] Second, the *Figgie* customers

---

[7] The district court used the COVID-19 pandemic to equalize this case with *Figgie*, but that is not enough. Indeed, the district court even acknowledged that "some customers

were required to return their purchased heat detectors to receive a full refund. *See id.* So, unlike the customers at issue here, the customers in *Figgie* did not obtain a windfall by receiving a full refund while also retaining the product they ordered. The district court's redress plan does not solve that problem. Nor does the district court's redress plan specifically address the category of customers that paid for expedited shipping but received their orders after the promised date.

In sum, we agree with the district court that Zaappaaz is liable for misrepresentations made to its customers who received their orders late. But we are not satisfied that the $25,308,436.45 portion of the damages award complies with § 57b(b)'s requirement that the remedy be "necessary to redress" that injury, or its prohibition on "exemplary or punitive damages." Accordingly, we remand for a more cohesive review and application of § 57b(b) to this portion of the judgment.

## IV.   Conclusion

For the reasons discussed, we AFFIRM the $12,241,035.69 portion of the judgment but VACATE the $25,308,436.45 portion of the judgment and REMAND for further proceedings in line with this opinion.

————————————————————

who received late orders may have been satisfied with their PPE orders." So, it is not in the same arena.

No. 24-20234

Kurt D. Engelhardt, *Circuit Judge*, concurring in part and dissenting in part.

Because I would vacate and remand the entire judgment, I concur in part and dissent in part.

I.

I agree that the district court erred in awarding $25,308,436.45 for full refunds to customers who received their orders late. That award is "irreconcilable with the relevant statute's direction that courts should grant the relief '*necessary* to *redress* injury.' 15 U.S.C. § 57b(b) (emphasis added)." *Ante*, at 9. So, I join section III.C. of the majority's opinion.

II.

I part ways with the majority on the $12,241,035.69 damages award. In my view, the district court reversibly erred.

Rule 56(g) motions are decided on the summary judgment record. Fed. R. Civ. P. 56(g). Accordingly, the Rule 56(g) analysis is "ancillary" to the summary judgment analysis. *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019) (quoting Wright & Miller, 10B Fed. Prac. & Proc. § 2737 (4th ed. 2018)). Because a Rule 56(g) motion relies on the summary judgment record, a fact held to be *disputed* at summary judgment cannot be relied on as *undisputed* to grant relief under Rule 56(g). But that is exactly what the district court did here.

At first, when ruling on FTC's motion for summary judgment, the district court held that $12.2 million was not established as an amount that could redress customer injury based on the summary judgment record. Yet, in a Rule 56(g) order, the district court inexplicably reversed course and held that $12.2 million was established as the amount that would address customer injury from undelivered and unrefunded orders, based on the same record. Whether we like it or not, we are governed by the law of non-contradiction.

No. 24-20234

Facts must be either disputed, or undisputed—but they cannot be both.[1] Here, the district court's first order must take precedence, and its second order, creating the contradiction, must fall.[2] The second order, which arbitrarily skirts the clear earlier holding that $12.2 million was a disputed damages figure at summary judgment, was an abuse of discretion.

To be sure, the district court's unexplained reversal may be attributed to FTC's own puzzling change in position. But the FTC's flip-flop is not in itself a justification for the district court to follow suit. FTC's abrupt change in position occurred after FTC *expressly* disclaimed seeking $12.2 million in damages at summary judgment consideration. Specifically, in response to Zaappaaz challenging the $12.2 million figure at the summary judgment

---

[1] Not only does the majority fail to recognize the limitations of Rule 56(g), it also is unwilling to recognize the commonsense proposition of the rule of non-contradiction. *See* Aristotle, Metaphysics bk. IV, ch. VI, at 1011b (W.D. Ross, trans., Oxford, Clarendon Press 1908) (c. 350 B.C.) (stating that "the most indisputable of all beliefs is that contradictory statements are not at the same time true"); St. Thomas Aquinas, The Summa Theologica of St. Thomas Aquinas, pt. II, q. 94, art. 2 (Fathers of the English Dominican Province trans., Burns Oates & Washbourne Ltd. 2d rev. ed. 1920) ("[T]he first indemonstrable principle is that the same thing cannot be affirmed and denied at the same time, which is based on the notion of being and not-being . . . .") (quotation marks omitted). *United States Bank National Association v. Verizon Communications, Inc.* is no answer to this basic tenet of logic. 761 F.3d 409, 428 (5th Cir. 2014); *see Ante*, at 8 n.4. While we referred to a district court's decision to revisit a prior ruling as a "plenary power," we reiterated that the use of that power must evince "*sound* discretion." *United States Bank Nat'l Ass'n*, 761 F.3d at 429 (emphasis added). The district court's about-face is unsupported by any additional evidence or even cogent reasoning for its initial, purportedly erroneous view of the facts. It was, for that reason, an abuse of discretion.

[2] This is in line with the other doctrines of this court and the U.S. Supreme Court which recognize that the first decision stands when there is a conflict between that first decision and a later one. *See Arizona v. California*, 460 U.S., 605, 618 (1983) (stating that "the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" absent the first decision being "clearly erroneous" and creating a "manifest injustice"). Similarly, under this court's rule of orderliness, "the earlier precedent controls." *United States v. Walker*, 302 F.3d 322, 325 (5th Cir. 2002).

13

motion, FTC said it was "not relying on" the $12 million damages number and that the figure was "*immaterial* to the issue of customer harm." The district court determined that summary judgment was not appropriate for these damages because FTC had presented only $37,549,471.14 as a damages figure, and had not presented "*any* lesser amount" of damages that could be necessary to redress customer injury. So, the $12.2 million owed was effectively "off the table"—or precluded—for 56(g) purposes.

FTC admitted at oral argument that it changed its position on the $12.2 million damages award when it filed its Rule 56(g) motion. At that point, for the first time, FTC decided that $12.2 million *was* material to the issue of customer harm. And FTC impermissibly asked the district court to ignore its prior representation and establish $12.2 million as the amount of damages for undelivered and unrefunded orders.

The district court, *without holding a hearing*, adopted FTC's new position. It inexplicably entered a new judgment deeming "ZAAPPAAZ LLC's net revenue from undelivered and unrefunded PPE orders was $12,241,035.69" established as an undisputed fact for trial. However, on the summary judgment record, which serves as the only basis for the decision, the district court held the opposite: "summary judgment as to monetary relief . . . should be denied because the Court lacks a basis for making such an award." No rational reason supported that abrupt 180-degree reversal.

Although the change in position alone is an abuse of discretion, it is clear that the $12.2 million damages figure was genuinely in dispute. At summary judgment, Zaappaaz indeed challenged the calculation's validity. Yet, FTC assuaged Zaappaaz's concerns by assuring it that FTC was "not relying on" the number and went so far as to say it was "immaterial." With those assurances from FTC, Zaappaaz was justified in doing nothing more to challenge that damages calculation and amount. The district court doubled down on that assurance by unequivocally holding that no evidence was presented to establish a $12.2 million damages award.

No. 24-20234

Then, when FTC argued that $12.2 million *was* material for the very first time, Zaappaaz again challenged the validity of the calculation. Zaappaaz filed a response to FTC's Rule 56(g) motion objecting to the $12.2 million figure and submitted evidence—including a spreadsheet with data purporting to show that 307 orders used in the $12.2 million calculation were actually delivered—that the damages number was incorrect to compensate for undelivered and unrefunded orders.[3] This evidence cannot be disregarded simply because Zaappaaz did not prove the orders were actually delivered.[4] None of these orders had registered a single customer complaint nor did these orders have a disputed refund charge from a credit card or bank. One would expect a customer who did not receive his or her order to complain about being charged for that order. In line with this common-sense understanding, the U.S. Supreme Court and this court have long accepted the presumption of mail delivery. *See Hagner v. United States,* 285 U.S. 427, 430 (1932); *Rosenthal v. Walker,* 111 U.S. 185, 193 (1884); *Beck v. Somerset Techs., Inc.,* 882 F.2d 993, 996 (5th Cir.1989). "Circumstantial evidence may be used to prove that the letter was put in the mail, 'including customary mailing practices used in the sender's business.'" *Faciane v. Sun Life Assurance Co. of Canada*, 931 F.3d 412, 421 (5th Cir. 2019) (quoting *Custer*, 503 F.3d at 420). And this "presumption of delivered mail cannot be rebutted simply by denying receipt; the

---

[3] FTC argues the district court did not need to consider this evidence as it was outside of the summary judgment record and only the summary judgment record need be considered during Rule 56(g) proceedings. However, given that this was the *first* time FTC was raising $12.2 million as a damages award, Zaappaaz cannot have been expected to present evidence that the $12.2 million damages figure was wrong until that time. The district court should have considered Zaappaaz's evidence prior to deeming the $12.2 million damages award undisputed and therefore established for trial. FTC effectively "back doored" this damages figure through Rule 56(g).

[4] Even if the district court considered this evidence weak, the Rule 56(g) judgment was inappropriate. *See Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 422 (5th Cir. 2007) ("[W]here the employee's assertion of non-receipt is supported by circumstantial evidence, and the employer provides an equally weak assertion that notice was mailed, the issue of mailing should not be decided at summary judgment.").

very purpose of a presumption would be undercut if all that were necessary to defeat a presumed fact were a party's uncorroborated statement." *Ortega v. Alamo Cmty. Coll. Dist.*, 31 F. App'x 152, at *1 (5th Cir. 2001); *see also Faciane*, 931 F.3d at 421 ("A bare assertion of non-receipt is insufficient to rebut the presumption." (quotation marks omitted)).[5]

Because Zaappaaz did not prove that the orders were delivered does not mean that Zaappaaz could not prove its standard mailing practices to correct addresses and establish the presumption of mail receipt. The district court erred in failing to consider this evidence before granting FTC's 56(g) motion.

In its Rule 56(g) judgment, the district court incorrectly held undisputed a fact that it held was disputed in the summary judgment record. That unreasoned, and arbitrary, change in position was an abuse of discretion. Accordingly, I respectfully dissent from part III.B. of the majority opinion which upholds the $12.2 million damages award.

\*\*\*

Because I would vacate and remand, there is no reason to indulge in whether this Circuit should adopt FTC's presumption of injury principle at this juncture.[6] For these reasons, I concur in part and dissent in part.

---

[5] 16 C.F.R. § 435.2(a)(4) requires a seller to maintain "records or other documentary proof establishing its use of systems and procedures which assure the shipment of merchandise in the ordinary course of business . . . ." The majority claims that no documentary proof of a *shipment* of merchandise exists and therefore there is "no reason to presume that the customers *received* their shipments." *Ante*, at 9 n.5. The majority misconstrues 16 C.F.R. § 435.2(a)(4) in attempting to apply a statute pertaining to shipment of merchandise to delivery of merchandise. The majority also fails to explain why the records Zaappaaz did provide are insufficient under 16 C.F.R. § 435.2(a)(4). It only indicts 10.6% of Zaapaaz's shipping records, but ignores the other 89% of documented and shipped orders.

[6] Only two circuits have applied the presumption of injury in this context. *See Fed. Trade Comm'n v. Am. Screening*, 105 F.4th 1098, 1102–03 (8th Cir. 2024); *Fed. Trade*

No. 24-20234

------------------------------------------------

*Comm'n v. QYK Brands*, No. 22-55446, 2024 WL 1526741, at *2–*3 (9th Cir. Apr. 9, 2024), *cert. denied sub nom. QYK Brands v. FTC*, No. 24-564, 145 S.Ct. 1170 (Mem) (U.S. Feb. 24, 2025). Both the Eighth and Ninth Circuit cases relied on in-circuit precedent, that does not exist in the Fifth Circuit, to hold that the presumption was appropriate. *Id.* Further, each of the cases cited by the majority relies on the reasoning in *F.T.C. v. Sec. Rare Coin & Bullion Corp.* 931 F.2d 1312, 1316 (8th Cir. 1991), which was abrogated by the U.S. Supreme Court. *See AMG Cap. Mgmt. v. FTC*, 593 U.S. 67, 70 (2021) (holding that 15 U.S.C. § 53(b) "focuses upon relief that is prospective, not retrospective" permitting injunctions, not court-ordered monetary relief). Even before the abrogation, the Fifth Circuit never recognized the *Rare Coin* presumption.